UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

ANHUI KONKA GREEN LIGHTING CO., LTD.,

                      Plaintiff,

-v-

GREEN LOGIC LED ELECTRICAL SUPPLY, INC.,
GEORGE GEFFEN, DANIEL L. YU, and DOES 1–100,

                      Defendants.

------------------------------------------------------------

18 Civ. 12255 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Anhui Konka Green Lighting Co., Ltd. ("Konka"), a manufacturer and supplier of LED lights, brings this action against Green Logic LED Electrical Supply, Inc. ("GLL"), one of its customers, George Geffen, GLL's CEO, and Daniel L. Yu, a GLL employee. Konka alleges that GLL breached contracts with Konka by failing to pay amounts owed under purchase orders for LED lights, and that Yu, with Geffen's knowledge, fabricated GLL affiliates to falsely induce Konka to ship more products to GLL for which GLL never paid. Konka brings claims against GLL for breach of contract, fraud, and quantum meruit, and against Geffen and Yu for fraud.

    Pending now is defendants' motion to dismiss for lack of subject matter jurisdiction and, in the alternative, to dismiss Konka's fraud and quantum meruit claims as inadequately pled. For the reasons that follow, the Court, finding that Yu's inclusion as a defendant destroys diversity jurisdiction, dismisses this case for lack of subject matter jurisdiction. The dismissal is without prejudice to Konka's right to replead in a manner consistent with subject matter jurisdiction.

1

**I.    Background**

   **A.    Factual Background[1]**

Konka is a company domiciled in Anhui Province, China. FAC ¶ 19. It manufactures and sells LED lights. *Id.* ¶ 1. On or about February 13, 2017, Konka representatives Yidi Zhang and Ling Liu visited GLL's offices in Mineola, New York. *Id.* ¶ 20. During the visit, Zhang and Liu met with Geffen, GLL's, CEO, *id.* ¶ 2, who introduced Yu as one of GLL's business operations leaders responsible for vendors and sourcing for GLL, *id.* ¶ 20. Yu was part of a China-based team that evaluated potential partners and products for sale in the United States. *Id.* ¶ 3. Zhang, Liu, Geffen, and Yu thereafter had a conference call in which Geffen confirmed that GLL employed Yu and authorized Yu to enter into contracts on GLL's behalf. *Id.* ¶ 20.

Later in February 2017, Yu and his associate Michael Kuang, also a GLL employee, visited Konka's Huizhou factory. *Id.* ¶ 21. Upon request, Konka sent panel light samples to GLL's Shenzhen office for evaluation. *Id.* GLL confirmed the quality of the product. *Id.* ¶ 5.

On or about February 24, 2017, GLL began to issue purchase orders to Konka through TradeGecko, an electronic portal for the verification and management of supply chains and purchases. *Id.* ¶ 22. The purchase orders all went through Liu via his e-mail address. *Id.* Konka received eight purchase orders calling for a total shipment of 62,724 items, at a cost to GLL of more than $1.5 million plus a 5.9% import tax. *See id.* ¶ 22. On or about March 5, 2017, Yu modified these purchase orders by consolidating certain of them into single purchase orders. *Id.* ¶ 23. During February and March 2017, Konka notified GLL of its acceptance of these purchase orders and shipped a quantity of products. *Id.* ¶ 24.

---

[1] The following account is drawn from Konka's First Amended Complaint. Dkt. 26 ("FAC"). For purposes of resolving a motion to dismiss, the Court accepts as true all factual allegations in the FAC, drawing all reasonable inferences in plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

On or about March 2017, Kuang came to a Konka factory to inspect the first batch of products. *Id.* ¶ 25. Konka was protected against default by a program called the China Export and Credit Insurance Corporation ("Sinosure"). *Id.* ¶ 6. That program would vet potential buyers and provide protection against default up to specified amounts. *Id.* Kuang described GLL's intention to submit more purchase orders, but indicated that GLL was subject to certain restrictions from Sinosure that limited the number of products it could order from Konka without upfront payment. *Id.* ¶ 25. Around March 25, 2017, Yu and Kuang, during a business meeting conducted over the internet platform "WeChat," represented that Yu or his family owned the company "In Style USA, Inc." ("In Style"), that In Style was a corporate affiliate of GLL, and that Yu was authorized to conduct business on In Style's behalf. *Id.* ¶ 26.

On or about March 25, 2017, Kuang gave Konka In Style's company information and asked Konka to submit In Style to Sinosure for a credit line application. *Id.* Konka alleges that, on or about Mach 25, 2017, Yu and Kuang represented that In Style wanted to import LED lights, but that this was in fact a lie, made to induce Konka to ship additional products to GLL on credit, for which Yu and Kuang knew Konka would not be paid. *Id.* ¶¶ 27–28. Konka further alleges that Kuang and Yu falsified GLL purchase orders to make them appear to have been authorized by In Style with the intent to defraud Konka into shipping additional products to GLL. *Id.* ¶ 29.

On or about April 20, 2017, Kuang and Yu made similar representations about "JED Lights, Inc. ("JED"). Over WeChat, Yu and Kuang represented that Yu or his family owned JED and that JED wanted to import LED lights, and they asked Konka to submit JED's information to Sinosure for a credit line application. *See id.* ¶¶ 30–32.

In reliance on these representations, Konka submitted credit line applications to Sinosure for In Style and JED. *Id.* ¶ 35.

On or about April 10, 2017, Konka received two additional purchase orders from GLL for a total shipment of 56,264 items, in exchange for which Konka was to be paid more than $1.1 million plus a 5.9% import tax. *See id.* ¶¶ 22, 34.[2] On or about April 26, 2017, Yu, via GLL's email address, modified these purchase orders to indicate that they were in fact coming from In Style and JED. *Id.* ¶ 36.

On or about June 15 or 16, 2017, Konka received two additional purchase orders from GLL for a total shipment of 37,240 items, for which Konka was to be paid $772,350 plus a 5.9% import tax. *See id.* ¶¶ 22, 37.

Konka actually shipped products under GLL's purchase orders valued at $796,422 to GLL's Farmington and Mineola offices, which GLL accepted. *Id.* ¶ 38. Konka actually shipped products valued at $775,735 under In Style's purchase orders to GLL's Manhattan and Farmingdale offices. *Id.* ¶ 39. Konka actually shipped products valued at $351,645 under JED's purchase orders to GLL's Manhattan office. *Id.* ¶ 40.

On June 20, 2017, Konka received partial payment of $54,750 from GLL, and on June 26, 2017, it received an additional $51,000. *Id.* ¶ 41. Sinosure did not pay Konka because In Style and JED did not actually receive the products; GLL received them. *Id.* ¶ 43. GLL did not make any further payments. *Id.*

---

[2] The FAC mentions purchase orders 10155 and 10159 twice: in ¶ 22, it alleges that they were submitted on April 26, 2017; in ¶ 35, it alleges that they were submitted on April 10, 2017. Because in ¶ 36, the FAC alleges that the same purchase orders were modified, the Court has construed the purchase orders to have initially been sent on April 10, 2017, and modified on April 26, 2017.

4

Konka alleges that the value of unpaid merchandise is $1,923,812, less payments of $105,750. *Id.* ¶ 11. Following a period of nonpayment, Konka withheld delivery of products. The value of product not delivered was $208,125. *Id.* Konka therefore alleges it is owed $1,609,963 under the purchase orders. *Id.*

**B.     Procedural History**

On December 27, 2018, Konka filed its initial complaint. Dkt. 1. On January 17, 2019, defendants filed their initial motion to dismiss. *See* Dkts. 18–19. On January 22, 2019, the Court issued an amend or oppose order. Dkt. 20. On February 7, 2019, Konka filed the First Amended Complaint, the operative complaint. Dkt. 26. On February 27, 2019, defendants filed a motion to dismiss, Dkt. 29, and a memorandum of law in support, Dkt. 30 ("Def. Mem."). On March 13, 2019, Konka filed an opposition. Dkt. 31 ("Pl. Mem."). On March 18, 2019, defendants filed a reply, Dkt. 33 ("Def. Reply"), and a supporting declaration from Richard Pu, Esq., Dkt. 32 ("Pu Decl."), with attached exhibits.

**II.    Discussion**

Defendants argue that the Court lacks subject matter jurisdiction because, contrary to the factual allegation in the FAC, Yu is not a dual citizen of the United States and Canada, but is instead a citizen of Canada only. Def. Mem. at 2. Konka counters that the evidence defendants offer to this effect is inadequate to so establish. The Court holds, with defendants, that it lacks subject matter jurisdiction over this action because, on the record at hand, Yu is solely a citizen of Canada, which under the governing principles means there is not complete diversity between the parties.

**A.     Legal Standards for Diversity Jurisdiction**

Diversity jurisdiction under § 1332(a) "requires complete diversity between all plaintiffs and defendants." *Pampillonia v. RJR Nabisco Inc.*, 138 F.3d 459, 460 (2d Cir. 1998). Diversity

is present when the action is between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), or between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3).

"However, diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Univ. Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

"It is . . . hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (citing 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3522, at 62–65 (2d ed. 1984); 15 J. Moore, *Moore's Federal Practice* § 102.14, at 102–24 (3d ed. 1998)); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." (citations omitted)). "That party must allege a proper basis for jurisdiction in [its] pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations . . . ." *Linardos*, 157 F.3d at 947; *see also Hertz Corp.*, 559 U.S. at 96–97 ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

Where, as here, "subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (citing Fed. R. Civ. P. 12(b)(1); *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the

pleadings, such as affidavits." (internal quotation marks and citations omitted)). "In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y. 2005) (collecting cases).

**B.      Analysis**

The FAC invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. FAC ¶ 13. The FAC alleges that Konka, the sole plaintiff, is a citizen of China. *Id.* ¶ 19. As to the defendants, it alleges that GLL is a citizen of New York, *id.* ¶ 16, that Geffen is also a citizen of New York, *id.* ¶ 17, and that Yu is a citizen of New York, the United States, and Canada, *id.* ¶ 18.

Accepting as correct the citizenships of the parties as pled—in particular, that Yu is in fact a dual citizen—his Canadian citizenship would not defeat diversity. That is because "only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) (internal quotation marks and citation omitted), *cert. denied* 503 U.S. 1006 (1992). Accordingly, on their face, the allegations in the FAC provide a proper basis for jurisdiction.

Defendants have rebutted the FAC's allegation as to defendant Yu's citizenship with facts. Yu attaches a sworn affidavit stating that he is "a citizen of Canada" and "not a citizen of the United States." Pu Decl. Ex. 4 ("Yu Aff.") ¶¶ 2–3. If so, diversity would not exist, because on one side would be an alien party (Konka) and on the other would be citizens (GLL and Geffen) and an alien (Yu).

Given defendant's factual demonstration, Konka therefore has the burden to support its jurisdictional allegations with competent proof. It has failed to do so. Instead, Konka offers no more than the following conjecture:

7

> [M]ultiple facts are known that suggest Defendant Yu may be a U.S. citizen, including: Defendant Yu resides in New York, where he is employed full-time at Defendant GLL's New York headquarters; Plaintiff served Defendant Yu at Defendant GLL's New York headquarters while Defendant Yu was operating in the ordinary course of business at his full-time employment; and . . . Defendant Yu is alleged to have committed extensive and calculated fraud in New York to secure delivery to Defendant GLL in New York of well in excess of $1 million.

Pl. Mem. at 9. Konka does not support any of these factual allegations in its brief with evidence. In any event, the above circumstances are fully consistent with Yu's being a Canadian but not a U.S. citizen. Many foreign citizens reside and work in New York without acquiring U.S. citizenship.[3]

Notably, even if Yu is a legal permanent resident in the United States—a point that the record neither establishes nor precludes—his Canadian citizenship would still defeat complete diversity. In the 2011 Clarification Act, Congress amended § 1332(a) to clarify the effect of foreign citizenship of a legal permanent resident on diversity jurisdiction. In 1988, § 1332(a) had been amended to include a "resident alien proviso" that stated that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *See* H.R. Rep. No. 112-10, at 6–7 (2011). Although Congress's intent in thus amending the statute had been to preclude federal alienage jurisdiction in suits between a citizen of a state and a foreign citizen permanently residing in the same state, some courts interpreted it as expanding diversity jurisdiction. For example, in *Singh v. Daimler-Benz AG*, 9 F.3d 303 (3d Cir. 1993), the Third Circuit allowed a federal-court lawsuit to proceed between, on the one

---

[3] The same principles apply to foreign corporations. If Yu were a foreign corporation, not a person, and had a principal place of business in New York, he would *still* count as a foreign entity so as to defeat complete diversity. *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) ("'[E]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity is nonetheless defeated if another alien party is present on the other side of the litigation.'" (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989) (citations omitted)).

8

hand, a permanent resident foreign citizen in one state and, on the other, a U.S. corporation resident in another state and a non-resident foreign corporation, even though the presence of foreign defendants on both sides would otherwise have destroyed complete diversity.

In the 2011 Clarification Act, Congress accordingly added a subordinate clause to § 1332(a)(2). It provides that "the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." 28 U.S.C. § 1332. A House report explains that this clause "achieve[s] the goal of modestly restricting jurisdiction, which Congress sought to accomplish when it first enacted the resident alien proviso, and . . . avoid[s] the threat of the expansion of jurisdiction" previously posed by the "resident alien proviso." H.R. Rep. No. 112-10, at 7; *see also H.K. Huilin Intern. Trade Co. v. Kevin Multiline Polymer, Inc.*, 907 F. Supp. 2d 284, 286–89 (E.D.N.Y 2012) (detailing history of amendments and accompanying case law).

Accordingly, Konka's jurisdictional allegations have been shown false by competent proof, which Konka has failed to rebut with competent proof. "[N]o presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) (citations omitted), *aff'd*, 125 F.3d 844 (2d Cir. 1997); *Kissel v. DiMartino*, Nos. 92 Civ. 5660 (CPS); 93 Civ. 1710/2963, 1993 WL 289430, at *4 (E.D.N.Y. July 20, 1993) ("[I]n opposing defendants' challenge of diversity jurisdiction, plaintiff is required to submit affidavits or other evidence . . . . but has not provided any evidence to controvert defendants' contention."). The Court declines to authorize the jurisdictional discovery sought by Konka. Konka asks that Yu file a supplemental sworn affidavit averring his

citizenship, *see* Pl. Mem. at 9, which Yu has now done, *see* Yu Aff. Under its broad discretion to order jurisdictional discovery, the Court does not see a need for Konka to conduct a two-hour deposition and five document requests, because it has not raised any credible reason to doubt Yu's sworn assertions. Therefore, because Konka and Yu are both foreign citizens, there is not complete diversity between the parties. And Konka has not alleged an alternative basis for subject matter jurisdiction. The Court therefore lacks subject matter jurisdiction over this action.

In light of the Court's determination that it lacks jurisdiction, the Court may not reach defendants' alternative grounds for dismissal, under Rule 12(b)(6). "Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint." *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 310 (S.D.N.Y. 2008) (collecting cases); *see also Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim . . . .").

## CONCLUSION

For the foregoing reasons, the Court dismisses this case for lack of subject matter jurisdiction. This dismissal is without prejudice to Konka to replead (e.g., bringing suit against a different combination of parties) in a manner consistent with subject matter jurisdiction.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 8, 2019
New York, New York