UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ANHUI KONKA GREEN LIGHTING CO., LTD.,

        Plaintiff,

   -against-

GREEN LOGIC LED ELECTRICAL
SUPPLY, INC., GEORGE GEFFEN,
and Does 1-100.

        Defendants.

-------------------------------------------------------X

Index No. 18-CV-12255 (PAE)

ANSWER, COUNTERCLAIMS
and THIRD-PARTY CLAIMS

JURY TRIAL DEMANDED

GREEN LOGIC LED ELECTRICAL
SUPPLY, INC,

        Third-Party Plaintiff,

   -against-

LIN LIU a/k/a BEN LIU, GUANG YU QIN,
YIDI ZHANG, GRAHAM CRIDLAND,
GABRIEL ULLRICH, ERICKSEN
ARBUTHNOT, PAUL KIM,
SQUIRE PATTON BOGGS LLP, and
MICHAEL KUANG,

        Third-Party Defendants.

-------------------------------------------------------X

Defendants Green Logic LED Electrical Supply, Inc. ("Defendant") for its Answer, Counterclaims and Third-Party Claims alleges as follows:

## AS AND FOR AN ANSWER

Referring to the following ¶¶ of the Second Amended Complaint, GLL

1. ¶ 1, denies that Plaintiff's (hereinafter "Konka") LED lights are of high quality, and otherwise denies information and belief as to the allegations of the ¶.

2. ¶ 2, admits the allegation of the ¶.

3. ¶ 3, denies the allegations of the ¶, except admits that Yu was evaluating products for sale in the U.S.

4. ¶ 4, admits the allegations of the ¶, except denies that GLL expressed an interest in purchasing Konka's products.

5. ¶ 5, denies the allegations of the ¶, except admits that

    a. GLL provided written purchase orders for product;

    b. the product was shipped FOB Nanjing to GLL in New York; and

    c. GLL took possession of the product and began to sell the product to its customers as part of its regular business.

6. ¶ 6, denies knowledge or information sufficient to form a belief as to the truth of the allegations of the ¶, except

    a. admits that Sinosure would vet potential buyers and provide protection against default up to specified amounts;

    b. denies that GLL wanted to buy more of Konka's product than the specified amount.

7. ¶ 7, denies the allegations of the ¶.

8. ¶ 8, denies the allegations of the ¶;

9. ¶ 9, denies the allegations of the ¶.

10. ¶ 10, admits that Yu was never authorized to act for JED Lights, Inc. or Instyle USA,

Inc. and otherwise denies the allegations of the ¶.

11. ¶ 11, denies the allegations of the ¶, except

   a. admits that GLL make payments of $105,750;

   b. denies knowledge or information sufficient to form a belief as to the truth of the allegation regarding the value of the undelivered product;

12. ¶ 12, denies knowledge or information sufficient to form a belief as to the truth of the allegations of the ¶.

13. ¶ 13, admits the allegations of the ¶.

14. ¶ 14, admits the allegations of the ¶, except denies that

   a. GLL or Geffen wrongfully caused injury to Konka in the state of New York and the Southern District;

   b. Yu or Geffen were officers and employees of GLL.

15. ¶ 15, admits the allegations of the ¶.

16. ¶ 16, admits the allegations of the ¶.

17. ¶ 17, admits the allegations of the ¶.

18. ¶ 18, denies knowledge or information sufficient to form a belief as to the truth of the allegations of the ¶.

19. ¶ 19, admits the allegations of the ¶, except denies that

   a. Geffen introduced Daniel Yu as one of GLL's business operations leaders; and that

   b. Geffen confirmed that GLL employed Daniel Yu and authorized Yu to enter into contracts on behalf of GLL.

20. ¶ 20, denies the allegations of the ¶, except admits that in February 2017, Yu and Kuang

visited Konka's Huizhou factory.

21. ¶ 21,

    a. admits that on or about 2/24/17 GLL started to issue Purchase Orders to Konka through TradeGecko, an electronic portal for the verification and management of supply chains and purchase;

    b. admits that each purchase order was sent to Konka by transmission to Lin Liu via e-mail at Ben.liu@konkagreenlighting.com, but:

    c. denies knowledge or information about which purchase orders were received by Konka; and

    d. denies the allegations regarding what was stated on the respective purchase orders and respectfully refers the court to such purchase orders for the contents thereof.

22. ¶ 22, denies knowledge or information regarding whether Yu modified purchase orders, and if so, what the modifications consisted of.

23. ¶ 23, denies the allegations of the ¶, except

    a. admits that over the course of February and March 2017, Konka notified GLL that Konka accepted GLL's Purchase Orders, and

    b. admits that Konka shipped the quantify of products that GLL requested in each purchase order,

    c. denies knowledge or information about what Konka relied on in shipping products to GLL;

    d. denies knowledge or information regarding what the purchase orders obligated GLL to do and respectfully refers the Court to the contents thereof.

24. ¶ 24, denies knowledge or information regarding what Kuang did or said;

25. ¶ 25, denies knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

26. ¶ 26, denies knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

27. ¶ 27, denies knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

28. ¶ 28, denies the allegations thereof.

29. ¶ 29, denies the allegations thereof.

30. ¶ 30, denies the allegations thereof.

31. ¶ 31, denies the allegations thereof.

32. ¶ 32, denies the allegations thereof

33. ¶ 33, denies the allegations thereof.

34. ¶ 34, denies knowledge or information sufficient to form a belief as to the truth thereof.

35. ¶ 35,  denies the allegations thereof.

36. ¶ 36, admits the allegations thereof.

37. ¶ 37, denies the allegations thereof.

38. ¶ 38, denies the allegatons thereof, except:

   a. denies knowledge or information as to what Konka would or would not have done;

39. ¶ 39, denies the allegations thereof, except:

   a. denies knowledge or information regarding what Konka would or would not have done under the circumstances set forth therein;

40. ¶ 40, admits the allegations thereof.

41. ¶ 41, denies knowledge or information regarding the allegations thereof.

42. ¶ 42, denies the allegations thereof, except:

    a. denies knowledge or information regarding what Sinosure did.

43. ¶ 43, GLL repeats its responses to ¶¶ 1-42.

44. ¶ 44, denies the allegations thereof.

45. ¶ 45, denies the allegations thereof, except

    a. admits that GLL issued the purchase orders identified therein.

46. ¶ 46, denies the allegations thereof, and respectfully refers the Court to the purchase orders to determine what such purchase orders provided for.

47. ¶ 47, denies knowledge or information regarding the legal effect of GLL's purchase orders.

48. ¶ 48, admits the allegations thereof.

49. ¶ 49, denies the allegations thereof.

50. ¶ 50, denies knowledge or information sufficient to form a belief as to the allegations thereof.

51. ¶ 51, denies the allegations thereof.

52. ¶ 52, denies the allegations thereof.

53. ¶ 53, denies the allegations thereof.

54. ¶ 54, denies the allegations thereof.

55. ¶ 55, admits the allegations thereof.

56. ¶ 56, denies the allegations thereof, except admits that GLL failed to pay some portion of

the $1,609,963 claimed by Konka.

57. ¶ 57, denies the allegations thereof.

58. ¶ 58, denies knowledge or information as to how, if at all, Konka was damaged.

59. ¶ 59, GLL repeats and realleges its responses to ¶¶ 1-58 of the Second Amended Compl.

60. ¶ 60, admits the allegations thereof.

61. ¶ 61, denies the allegations thereof.

62. ¶ 62, denies the allegations thereof.

63. ¶ 63, denies the allegations thereof.

64. ¶ 64, denies the allegations thereof.

65. ¶ 65, denies knowledge or information as to the allegations thereof.

66. ¶ 66, denies knowledge or information as to the allegations thereof.

67. ¶ 67, denies the allegations thereof.

68. ¶ 68, denies the allegations thereof.

69. ¶ 69, denies the allegations thereof.

70. ¶ 70, repeats and realleges its responses to ¶¶ 1-69 of the Second Amended Complaint.

71. ¶ 71, denies the allegations thereof.

72. ¶ 72, denies the allegations thereof.

73. ¶ 73, denies the allegations thereof.

74. ¶ 74, denies the allegations thereof.

75. ¶ 75, denies the allegations thereof.

76. ¶ 76, denies the allegations thereof.

77. ¶ 77, denies the allegations thereof.

78. ¶ 78,  denies the allegations thereof.

79. ¶ 79,  denies the allegations thereof.

80. ¶ 80,  denies the allegations thereof.

81. ¶ 81, repeats its responses to ¶¶ 1-80 of the Second Amended Complaint.

82. ¶ 82,  denies the allegations thereof.

83. ¶ 83,   denies the allegations thereof.

84. ¶ 84,  denies the allegations thereof.

85. ¶ 85,  denies the allegations thereof.

86. ¶ 86,  denies the allegations thereof.

87. ¶ 87, denies the allegations thereof.

88. ¶ 88, denies the allegations thereof.

89. ¶ 89, denies the allegations thereof.

90. ¶ 90, denies the allegations thereof.

91. ¶ 91, denies the allegations thereof.

<u>Allegations as to All Affirmative Defenses, Counterclaims and Third-Party Claims</u>

92. The third-party defendants are as follows:

   a. Guang Yu Qin, Plaintiff's owner;

   b. Yidi Zhang, Plaintiff's president;

   c. Lin Liu a/k/a Ben Liu, Plaintiff's foreign sales liaison;

   d. Graham Cridland, Gabriel Ullrich, Ericksen Arbuthnot, Paul Kim and Squire Patton Boggs (collectively, "the Lawyer Third-Party Defendants"), are Konka's lawyers.

93. Plaintiff has already been paid for some or all of the losses it alleges.  Furthermore, Plaintiff no longer owns some or all of its cause of action for breach of contract.  In particular:

    a. The China Export and Credit Insurance Corporation is a China corporation.  That corporation runs a program called Sinosure that insures suppliers like Plaintiff against default in payment by its customers.

    b. Sinosure sent Plaintiff a 3/12/18 Letter of Indemnity, written in Chinese, which annexes two documents:

        i.  a Letter of Subrogation, written in Chinese;

        ii. the same Letter of Subrogation, but written in English.

    c. The Letter of Indemnity states, in relevant part:

"To: Anhui Konka Lighting... given that the buyer Green Logic Supply Inc....'s default caused losses to your company, our company decides to pay an indemnity to your company... the indemnity amount is ... USD 483,470.40."

                                            ... China Export & Credit Insurance Corporation"

        i. The annexed Letter of Subrogation in Chinese transfers Plaintiff's rights to Sinosure:

"To: China Export & Credit Insurance Corporation,

  This is to certify that we have received the indemnity... **the insured agrees to transfer all rights and interests under the terms of indemnity to your company** and grants the full authority to your company, so that your company can claim the compensation from the responsible party in the name of the insured or your company." (bold supplied).

        ii. Similarly, the Letter of Subrogation written in English states:

To: China Export & Credit Insurance Corporation...

"In consideration of having received this payment, we hereby agree to **assign, transfer and subrogate to you,** to the extent of your interest, all our rights and remedies in and in respect of the subject matter insured, and to grant you full power and give you any assistance you may reasonably require of us in the exercise of such rights and remedies in

our or your name." (bold supplied)

94. If the issuance of purchase orders in the name of Instyle USA, INC. ("Instyle") and JED Lights, Inc. ("JED") constituted an act of fraud on the part of any Defendant, Plaintiff was <u>in pari delicto</u> with such Defendant. In particular,

    a. on or about 4/17/18 Plaintiff's representative Ben Liu ("Liu") sent GLL's representative Daniel Yu ("Yu") a message via a software program called WeChat expressing a desire to have a company other than GLL issue Plaintiff purchase orders:

"Daniel. There are two things about the New PO: 1, **need to move some pcs under another company's name for sino insure**" (bold supplied).

    b. Third-Party Defendant's and Plaintiff's purpose in issuing purchase orders in the name of Instyle and JED was to increase the dollar amount of lighting panels that would be insured by Sinosure;

    c. Yu attempted to convince Liu that it was unnecessary to issue purchase orders in the name of any company other than GLL:

"if you manufacture now, by the time it's time to ship, I would have paid X amount; anyways and therefore the credit will be free by that time."

    d. but Liu insisted on issuing purchase orders in the name of a company other than GLL:

"I need to have an answer for China today. That's why I kept calling..." (ellipses in original)

95. The goods Plaintiff sent Defendant GLL were defective. Amongst other things:

    a. Plaintiff used below grade plastics;

    b. Plaintiff used below grade power supplies.

<u>As and For a First Affirmative Defense</u>

96. Plaintiff has been paid for some or all of the amounts it claims.

## As and For a Second Affirmative Defense

97. Plaintiff doesn't own some of the causes of action asserted by it.

## As and for a Third Affirmative Defense

98. If GLL was involved in any act of fraud, Plaintiff and the Third-Party Defendants were *in pari delicto* with GLL.

## As and For a Fourth Affirmative Defense

99. Because the idea of issuing purchase orders in the name of Instyle and JED originated with Plaintiff, Plaintiff did not reasonably rely on any act by Defendants in connection with the issuance of such purchase orders.

## As and For a Fifth Affirmative Defense

100. Plaintiff has failed to satisfy the applicable statute of frauds.

## As and For a Sixth Affirmative Defense

101. If the parties had a contract, Plaintiff committed a material breach which relieved GLL of any obligations to perform under the contract.

## As and For a Seventh Affirmative Defense

102. If the parties had a contract, Plaintiff committed a material breach thereof which

relieved GLL of any obligations to perform under the contract.

### As and for a Eighth Affirmative Defense

103. GLL's acceptance of the delivery of Konka's products was fraudulently induced by the falsification of Konka's manufacturing reports.

### As and For a First Counterclaim (Breach of Contract)

104. GLL repeats each of the foregoing allegations as if fully set forth hereinafter.

105. GLL's purchase orders were an offer to buy which, when accepted by Plaintiff, gave rise to an enforceable contract.

106. Plaintiff breached the contract by, amongst other things:

    a. supplying defective goods in that the goods

        i. used below grade plastics and

        ii. used power supplies inferior to those called for by GLL's purchase orders;

    b. failing to perform under warranties appearing on GLL's purchase orders, including failing to:

        i. honor a five-year warranty to replace any defective products;

        ii. immediately refund the purchase price of the goods if defects were found in 2% of the goods within 90 after days of arrival at destination port, and paying logistic charges.

        iii. immediately refund 100% of the purchase price if defects were found in over 2% of Plaintiff's goods within 91-365 days of arrival at destination port, and

        paying logistic charges;

   iv.    replace defective goods with non-defective goods, within 60 days of a claim of defect, where the defects are discovered more than 365 days after arrival of the goods at port;

   v.    store defective goods at GLL's warehouse ready for inspection by Plaintiff.

   vi.    failed to inspect Konka's products within 30 days of a claim of defect, causing Konka to default in GLL's favor;

   vii.    stock at buyers warehouse one (1) driver per 1,000 pcs shipped for warranty and replacement purposes.

107. As a result, GLL was either unable to sell Plaintiff's goods to GLL's customers, or such customers returned the goods.

108. By reason of the foregoing, GLL suffered losses not less than $2,168,l00, including:

   a. $92,400, representing the cost of shipping Plaintiff's goods from from China to the U.S.

   b. $26,400, representing tariffs and freight charges paid by GLL;

   c. $350,000 representing GLL's lost profits;

   d. $100,000, representing bad debt losses resulting from GLL's customers refusing to pay for Plaintiff's goods;

   e. $600,000, representing loss of business from GLL's customers;

   f. $1,000,000, representing loss of future profits from a bad credit rating given GLL by Sinosure.

<u>As and For a Second Counterclaim and First Third-Party Claim (Fraud)</u>

109. GLL repeats each of the foregoing allegations as if fully set forth hereinafter.

110. Plaintiff and its owner Kuang Yu In, its president Yidi Zhang, and its foreign sales liaison Lin Liu falsified Plaintiff's manufacturing reports to conceal that its products failed to comply with the specifications in Defendant GLL's purchase orders.

111. In particular:

   a. Konka's products are tested to assure that they will last five years in the field.

   b. Konka used a component that's not known to show that the product will last five years.

   c. Nevertheless, Konka's manufacturing tests yielded reports their products will last years.

   d. Thus, Konka's manufacturing test reports must have been falsified.

112. GLL believed that Plaintiff's manufacturing reports truthfully stated the facts regarding the manufacture of Plaintiff's goods;

113. Acting in reliance thereon, GLL accepted delivery of Plaintiff's goods.

114. By reason thereof, Plaintiff suffered losses totaling not less than $2,168,l00, including:

   a. $92,400, representing the cost of shipping Plaintiff's goods from from China to the U.S.

   b. $26,400, representing tariffs and freight charges paid by GLL;

   c. $350,000 representing GLL's lost profits;

   d. $100,000, representing bad debt losses resulting from GLL's customers refusing to pay for Plaintiff's goods;

   e. $600,000, representing loss of business from GLL's customers;

  f. $1,000,000, representing loss of future profits from a bad credit rating given GLL by Sinosure.

### As and For a Third Counterclaim and Second Third-Party Claim against Plaintiff, Plaintiff's Officers and Employees and the Lawyer Third-Party Defendants (Violation of Judiciary Law § 487)

115. GLL repeats each of the foregoing allegations as if fully set forth hereinafter.

116. By reason of Plaintiff's and the Lawyer Third-Party Defendants' conduct, including:

  a. Seeking amounts for which Plaintiff had been paid by Sinosure,

  b. Asserting causes of action which Plaintiff no longer owned,

  c. Issuing purchase orders in the name of InStyle and JED,

  d. Falsifying its manufacturing reports,

Plaintiff engaged in acts of deceit and collusion in violation of Judiciary Law § 487.

117. By reason thereof, Plaintiff suffered the aforementioned losses totaling not less than $2,168,800, and is entitled to judgment in an amount three times what GLL lost.

### As and For a Fourth Counterclaim and Third Third-Party Claim against Plaintiff, Plaintiff's Officers and Employees and the Lawyer Third-Party Defendants (Fraud on the Court)

118. GLL repeats each of the foregoing allegations as if fully set forth hereinafter, including allegations that Plaintiff and the Lawyer Third-Party Defendants:

  a. claimed amounts for which Plaintiff had already been paid;

  b. asserted causes of action that Plaintiff has assigned to Sinosure.

119. By reason of the foregoing, Plaintiff and the Third-Party Defendants engaged in a fraud on the Court.

WHEREFOR, GLL demands 1) judgment dismissing Plaintiff's claims, 2) judgment in GLL's favor in an amount not less than $6,506,400, 3) trial by jury, and 4) such other and further relief as the Court deems just and proper.

Dated: New York, NY
December 17, 2019

                /s/ Richard Pu
              Richard Pu (RP2321)
             Attorney for Defendants

               120 E. 90th St., 10C
              New York, NY 10128
               (212) 427-3665 (o)