
Case 1:18-cv-12255-MKV-KHP   Document 212   Filed 09/09/20   Page 1 of 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANHUI KONKA GREEN LIGHTING CO., LTD.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>-against-<br><br>GREEN LOGIC LED ELECTRICAL SUPPLY, INC.,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:<br>DATE FILED: 9/9/2020<br><br>1:18-cv-12255 (MKV) (KHP)<br><br>**OPINION AND ORDER**<br>**GRANTING MOTIONS TO**<br>**DISMISS** |
| GREEN LOGIC LED ELECTRICAL SUPPLY, INC.,<br><br>    Third-Party Plaintiff,<br><br>-against-<br><br>BEN LIU, GURAN YU QIN, YIDI ZHANG, GRAHAM CRIDLAND, GABRIEL ULLRICH, ERICKSEN ARBUTHNOT, PAUL KIM, and SQUIRE PATTON BOGGS LLP,<br><br>    Third-Party Defendants. | |

MARY KAY VYSKOCIL, United States District Judge:

  Plaintiff Anhui Konka Green Lighting Co., Ltd. ("Konka") filed this lawsuit to collect funds allegedly past due on purchase orders for LED lighting panels which had been submitted by Defendant Green Logic LED Electrical Supply, Inc. ("GLL"). What began as a simple contract dispute, however, has evolved into a multi-year clash with each Party levying accusations of misconduct against the other side. Before the Court now are two motions to dismiss Defendant's Counterclaims and Defendant's Third-Party Complaint. Specifically, Plaintiff Konka and Third-Party Defendant Ben Liu move [ECF #124] to dismiss all but one of the claims asserted against them in Defendant's Amended Answer, Counterclaims, and Third-

Party Claims [ECF #106] (the "Answer").  Separately, Third-Party Defendants Ericksen Arbuthnot, Gabriel Ullrich, Graham Cridland, Squire Patton Boggs, LLP, and Paul Kim (all of whom were, until recently, counsel to Plaintiff, *see* ECF #211) move to dismiss the claims against them [ECF #125].

As described further below, the Motions to Dismiss are GRANTED.

## BACKGROUND

The facts of this case are stated only to the extent necessary to resolve the motions at issue here and are taken from the Counterclaims and Third-Party Complaint of Defendant, as the non-moving party.[1]  To the extent the facts therein require supplementation, the Court recites the facts as stated in the Second Amended Complaint [ECF #36] ("SAC").

The Parties' dispute centers around twelve purchase orders for LED light panels, issued by GLL between February and June 2017, for which Konka claims it was never fully paid.  SAC ¶¶ 21, 45, 54.  GLL does not dispute that it submitted several purchase orders, but denies knowledge as to which of the twelve purchase orders in the SAC are valid.  *See* Answer ¶ 21.  GLL states that prior to the Purchase Orders being submitted, Konka never supplied the "standard terms and conditions" that are incorporated into the Purchase Orders and that at least some of the contracts in question were written in Chinese, a language which neither GLL nor any of its agents or employees could read.  Answer ¶ 95-98.  In addition, on two of the twelve purchase orders, Konka also allegedly changed the purchaser's names from GLL to "Instyle USA" and "JED Lights" using "a software like Photo Shop [sic]."  Answer ¶ 101-02.  The change was allegedly made in order to make the purchase orders insurable by Konka's insurance

---

[1] On a motion to dismiss, the Court accepts the Plaintiff's allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] court must accept as true all of the allegations contained in a complaint [except for] legal conclusions.").  When the motion seeks to dismiss counterclaims or a third-party complaint, the Defendant is the "plaintiff" for these purposes.

provider, the China Export and Credit Insurance Corporation's Sinosure Program ("Sinosure"). Answer ¶ 100. It is unclear whether Defendant contends that the name change on these two purchase orders somehow invalidates them.

Also relevant to the Motions, Defendant states that discovery revealed that Plaintiff has already recovered, through its insurance from Sinosure, some of the losses claimed in this action. Answer ¶ 99. Specifically, Konka received a payment of $483,470.40 from Sinosure as "indemnity" for the "losses to [Konka]" from GLL's default. Answer ¶ 99.

The SAC asserts claims for breach of contract, fraud, and quantum meruit against GLL. Konka's theory is straightforward: GLL and its agents failed to pay the amounts due on the valid purchase orders. As for the two purchase orders containing different names (*i.e.* the Purchase Orders for "Instyle USA" and "JED Lights"), Plaintiff claims that GLL directed the name substitution in an attempt to avoid paying for Konka's products by signing contracts for fabricated affiliate companies. *See* SAC ¶ 43-91. Defendant initially moved to dismiss [ECF #37] the SAC. Judge Engelmayer, to whom this case was previously assigned, largely denied the motion [ECF #58], but dismissed one individual defendant from the case. While that motion was pending however, the Parties began discovery in this case, which is being overseen by Magistrate Judge Katharine A. Parker.

Following Judge Engelmayer's order, Defendant filed an Answer with Counterclaims and a Third-Party Complaint [ECF #105]. The Answer contains four counterclaims and two claims against third-parties. The third-parties joined by the Answer are Konka's President Yidi Zhang, its Owner Kuang Yu In, and sales liaison Lin "Ben" Liu, as well as Plaintiff's former counsel Graham Cridland and Gabriel Ulrich at Erickson Arbuthnot, and Paul Kim at Squire Patton

Boggs, LLP.[2] *See* Answer ¶ 92.  To date, only Mr. Liu and the Lawyer Defendants have appeared.

In its counterclaims, Defendant first alleges that to the extent any of the purchase orders are valid, Konka breached the contracts by providing defective LED lights.  Answer ¶ 118-22.  Second, Defendant brings a fraud counterclaim which alleges that Konka fraudulently concealed that the lights did not comply with the contract.  Answer ¶ 123-29.  Third, Defendant asserts an additional fraud counterclaim for Konka's "photoshopping" two purchase orders to change the name of the purchaser.  Answer ¶ 130-33.  Finally, Defendant brings a third fraud counterclaim (pleaded as both fraud and breach of the covenant of good faith and fair dealing) based on Plaintiff's decision not to reduce its claims in this lawsuit by the amount of its insurance recovery from Sinosure.  Answer ¶ 134-41.

The Third-Party Claims largely overlap with the final counterclaim.  Indeed, Defendant's first third-party claim is pleaded in the same paragraphs of the Answer.  *See* Answer 134-41.  As a second third-party claim, Defendant asserts that the Lawyer Defendants have violated New York Judiciary Law § 487 by seeking a "double recovery" for the amounts already paid by Sinosure.  Answer ¶ 142-47.

The Lawyer Defendants have moved to dismiss the third-party claims against them in their entirety.  In support of their motion, the Lawyer Defendants have filed a notice of their motion, a memorandum of law, and a declaration of counsel [ECF #125] as well as a reply memorandum of law [#150].  Konka moves to dismiss counterclaims two through four, but does not move against the breach of contract counterclaim, which mirrors Plaintiff's claim in the SAC.  In support of its motion, Konka has filed a notice, a memorandum of law, and a

---

[2] For ease of reference herein, the Court refers to the lawyer defendants—Erickson Arbuthnot, Squire Patton Boggs, LLP, Messrs. Cridland, Ulrich, and Kim—as the "Lawyer Defendants."

declaration of counsel [ECF #124] as well as a reply memorandum of law [ECF #149]. Third-Party Defendant Ben Liu is also a party to Konka's motion, and seeks dismissal of all claims against him. *See* ECF #124. GLL opposes both motions and filed two memoranda of law in opposition [ECF #138, 165] and two declarations of counsel [ECF #137, 164].[3]

## DISCUSSION

*A.     Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Holborn Corp. v. Sawgrass Mutual Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018) (internal quotation omitted).

Requiring more than plausibility though, fraud claims must be pleaded with "particularity." *See* Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. App'x 27, 30 (2d Cir. 2014)

---

[3] The Court is aware that GLL's opposition to the Lawyer Defendants' motion to dismiss was not timely filed. Subsequently, the Lawyer Defendants filed and "objection" to the untimely filing [ECF #167] requesting leave to file a second reply memorandum in support of their motion. To the extent that request remains outstanding, it is denied as moot.

(quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Simply put, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).  To the extent any different standard may be inferred for a "course of conduct" allegation, as Defendant suggests here, the pleading of the claim as a whole must satisfy the particularity requirement of Rule 9(b).  *In re Ford Fusion and C-Max Fuel Economy Litig.*, No. 13-md-02450 (KMK), 2015 WL 7018369, at *14 (S.D.N.Y. Nov. 12, 2015) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097. 1103-04 (9th Cir. 2003)).

B.      *Defendant's Second Counterclaim Fails to Allege Conduct Independent of a Contract*

The first fraud counterclaim asserted by Defendant (its "Second Counterclaim") seeks damages for Konka's alleged actions to conceal that the components GLL purchased purportedly would not comply with the terms of the Parties' contracts.  Answer ¶ 124-27.  Specifically, Defendant's purchase orders with Konka warrantied that the products would last five years. Answer ¶ 125.  However, Defendant alleges that Konka "falsif[ied] the manufacturing reports . . . to conceal that its products failed to comply with the specifications."  Answer ¶ 124.  This claim fails, however, because a fraud claim does not lie for breach of a warranty contained in a contract.

New York law expressly distinguishes between tort and contract claims, holding that a tort claim such as fraud can only be maintained where a defendant "has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations."  *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995).  "Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie."  *Id.*  To plead a separate tort claim, a

plaintiff must allege that the defendant would be liable even if no contract existed.  *BNP Paribas Mortgage Corp. v. Bank of Am., Nat'l Ass'n*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013).

Here, Defendant's counterclaim fails.  No party disputes that the warranty that Konka's products would last five years existed only because allegedly it was contained in the purchase orders.[4]  Absent that provision or any other such contractual warranty, Konka would have no duty to ensure its products lasted any period of time.  In light of that, there is no duty independent of the contract with respect to which Defendant may assert a fraud claim.  Instead Defendant may assert, and, indeed, has asserted, a breach of contract claim for the failure of Konka's products to meet the purported warranty in the Purchase Orders.  *See* Answer ¶ 118-122.

Defendant's arguments to the contrary are unavailing.  The only duty independent of the contract to which Defendant points is a duty to "refrain from falsifying manufacturing reports" under a theory that Konka knew GLL would review such reports to ensure compliance with the warranty in the contract.  *See* Defendant's Opposition to Motion to Dismiss, ECF #138, at 5.  This is not sufficient to sustain the claim.  At best, any falsification of records relates to Konka's promise to perform under the terms of the already-existing contract.  *TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*, 51 F. Supp. 3d 405, 412 (S.D.N.Y. 2014).  Put another way, the falsification of manufacturing reports only matters because of the warranty that Defendant asserts was present in the Purchase Orders.  It is not "apart from and independent of promises made [in the contract]" and therefore cannot sustain an independent fraud claim.  *See Neff v.*

---

[4] Plaintiff contests that such a warranty was ever made, or at least argues that such a warranty was not included in the terms of the final contract.  Instead, it assumes the warranty's existence solely for the purposes of its motion to dismiss.  *See* Motion to Dismiss Counterclaims, ECF #124, at 9 n.3.  No party has placed any of the purchase orders in the record, so the Court is unable to determine whether such a warranty was, in fact, included in the Parties' contract.

*Automobile Ins. Co. of Hartford*, Case No. 08-cv-08532 (LS), 2009 WL 435297, at *2 (S.D.N.Y. Feb. 22, 2009).  The Second Counterclaim is therefore dismissed.

C.     *Defendant's Third Counterclaim Fails Adequately to Plead Fraud*

Defendant's second counterclaim for fraud (its "Third Counterclaim") concerns Plaintiff's allegedly "photoshopping" the names of two unrelated companies onto two of GLL's purchase orders.  *See* Answer ¶ 130-33.  This claim falls far short of pleading fraud, let alone with particularity as required by Rule 9(b).  As a result the claim is dismissed.

Rule 9(b) requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro*, 572 Fed. App'x at 30.  Here, Defendant alleges that the false "statements" were the "names of Instyle and JED Lights" on the purchase orders in question.  *See* Answer ¶ 130.  Defendant suggests that the speaker is Konka, who, at an unknown time and place, cut-and-pasted those names onto the Purchase Orders.  *Id.*  However, Defendant does not explain how this behavior was fraudulent (*i.e.* how it was relied upon or impacted Defendant's behavior).  *See, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("A statement cannot be fraudulent if it did not affect a[] decision of the plaintiff.").  Nor does Defendant explain how it was damaged, since it never disputes that it received the products that were the subject of the purchase orders.

Specifically, the Court is unable to determine what course of action Defendant would have taken differently had GLL's name, and not Instyle's or JED Lights' name, been on the purchase orders.  Defendant argues that the purchase orders should have been in GLL's name.  The only plausible reason that this is an important detail of the contracts is to assure that GLL, and not Instyle or JED Lights, received the LED panels in question.  However, Defendant does not state that it did not receive the components in question.  In fact, Plaintiff suggests that

8

Defendant admits to accepting the parts and Defendant does not dispute this point.  *See* Konka's and Liu's Motion to Dismiss at 10-11 (citing Answer ¶ 11).  The Court is left to infer that Defendant receives the components purchased, regardless of the name on the purchase orders.  As a result, the Court cannot ascertain what impact, if any, the name-switching had on Defendants.

Defendant's theory of damages on this claim is equally puzzling.  On this third counterclaim, Defendant claims compensatory damages only in the form of attorney's fees.  *See* Answer ¶ 132.  However, those fees were and are being expended to contest liability for non-payment of the purchase orders.  It is not clear what change GLL's name being on the purchase orders would have on Defendant's legal strategy here.  This is especially true because to the Court's knowledge all of the other purchase orders do contain GLL's name, but litigation is still ongoing over them.

Plaintiff is correct that the Defendant's third counterclaim is "incomprehensible and puzzling."  *See* Konka and Liu's Reply Brief, ECF #149, at 5. It is unclear what damages Defendant claims plausibly are related to the alleged "name-switching" fraud.  Moreover, the Court cannot ascertain any remotely plausible effect that the alleged fraud would have had on Defendant's behavior, especially in light of the facts as stated in Defendant's own Answer.   As a result, the Third Counterclaim is dismissed.

D.        *Defendant's Fourth Counterclaim, and Both Third-Party Claims, Fail to State a Claim.*

Defendant's Fourth Counterclaim and both of its third-party claims attempt to hold Konka, its agents, and the Lawyer Defendants liable for failing to reduce Konka's claims in this litigation by the amount of the approximately $483,000 insurance recovery from Sinosure.  *See* Answer ¶ 134-47.  Defendant pleads this claim as fraud and breach of the covenant of good faith and fair dealing (the Fourth Counterclaim and First Third-Party Claim), and as a violation of

New York Judiciary Law § 487 (the Second Third-Party Claim). Each of these claims fails because Plaintiff's refusal to reduce its claim is not actionable conduct under any theory.

Defendant suggests in essence that the damages for Plaintiff's contract claim for unpaid amounts due under the purchase orders must be offset *in the complaint* by any insurance recovery it receives before or during litigation. Failing to do so immediately, under Defendant's theory, is fraud on the court, a breach of the covenant of good faith and fair dealing, and a violation of New York Judiciary Law. The law, however, has developed a different way of dealing with this problem: set-offs for "collateral source" payments. The collateral source rule holds that in most cases, the amount of an insurance recovery (or recovery from any other source "collateral to" the litigation) for the damages incurred by a plaintiff will not be set off from the final damage award against a defendant. *See, e.g.*, *Aretakis v. Cole's Collision*, 165 A.D.3d 1458, 1460 (3d Dep't 2018) (noting that the collateral source doctrine "precludes the reduction of a damages award by the amount of any compensation that the injured person may receive from another source."). New York has codified this rule by statute. *See* N.Y. C.P.L.R. § 4545.[5]

Set-offs for collateral source payments are not made until such time as there is a factual determination about how much of a plaintiff's damages are exposed to the set-off. *See, e.g.*, *Brassco, Inc. v. Klipo*, No. 99-cv-03014 (PAC), 2006 WL 223154, at *18 (S.D.N.Y. 2006) (considering damages set-offs after trial); *Inchaustegui v. 666 5th Avenue Limited P'ship*, 268 A.D.2d 121, 126 (1st Dep't 2000) (applying collateral source setoff after factual determination of what the plaintiff's damages were). Issues complicating this analysis include, for example,

---

[5] Whether the collateral source rule applies to contract cases and not just to tort cases appears to be an issue in dispute among courts. *Compare Aretakis*, 165 A.D.3d at 1460 ("[I]t is true that the common-law collateral source rule . . . does not apply to breach of contract claims"), *with Elias Props. East Setauket, LLP v. Kohl's Dep't Stores, Inc.*, No. 04-cv-01274 (JS)(MLO), 2006 WL 8441143, at *5 (E.D.N.Y. June 13, 2006) ("The collateral source rule apparently applies to breach of contract claims as well.") (citing *Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc.*, No. 04-cv-05962 (PKL), 2005 WL 1634002, at *6 (S.D.N.Y. July 12, 2005)).

whether the plaintiff can recover any amount of insurance premiums that were paid in advance of the reimbursement payment, in other words, whether there is an offset to the offset. An application to limit a plaintiff's recovery may be appropriate for a motion for summary judgment, assuming there are no factual disputes about what the damages are, but it is not a basis to bring an independent counterclaim for inadequate pleading.

Dismissal of Defendant's counterclaims and third-party claims is appropriate because Plaintiff's conduct in asserting its damages amount in the SAC is not actionable, and because the Defendant can properly raise any set-off issues as an affirmative defense or by motion practice before or after trial. Plaintiff's conduct (and by extension the conduct of Plaintiff's agents and the Lawyer Defendants) is not actionable under any of Defendant's theories. Whether pleaded as fraud or breach of the implied covenant of good faith (Counterclaim Four and Third-Party Claim One), Plaintiff can only be liable for a breach of an existing duty or knowing misrepresentation of a fact. *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages."); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages."). And, a claim pursuant to the New York Judiciary Law (Third-Party Claim Two) requires that the Plaintiff have engaged in "deceit." *See* N.Y. Judiciary L. § 487.

Plaintiff's refusal (or that of its lawyers) to cut Plaintiff's damages demand in this case by nearly half a million dollars at the pleading stage does not rise to the level of any such misconduct. Defendant has not stated any duty which was breached or any material misstatement upon which it relied to its detriment. Instead, GLL points to a generalized duty to

be truthful in pleadings and not to deceive the Court. *See* Defendant's Memorandum in Opposition, ECF #138, at 11-12. While attorneys of course are required to be truthful in pleadings, the remedy for an attorney's failure to do so is sanctions pursuant to Federal Rule of Civil Procedure 11.[6] Moreover, Plaintiff cannot be said to have attempted to deceive the Court by proceeding in the same manner as every other case involving insurance set-offs. Any set-off to Plaintiff's eventual award, if any, appropriately will be made at a later stage of this case. Defendant cannot bring claims based on Plaintiff's failure to take actions that are not otherwise required by the federal pleading rules.[7]

## CONCLUSION

For the reasons discussed above, the Motions to Dismiss [ECF #124, 125] are GRANTED. Defendant's Second, Third, and Fourth Counterclaims are DISMISSED. Both of Defendant's Third-Party Claims against the Lawyer Defendants and Ben Liu are DISMISSED in their entirety.

The Clerk of the Court is respectfully requested to close the motions at ECF #124 and 125.

**SO ORDERED.**

Date: **September 9, 2020**  
**New York, NY**

_____  
**MARY KAY VYSKOCIL**  
**United States District Judge**

---

[6] By separate opinion today, the Court denies Defendant's objection to a decision of Magistrate Judge Parker refusing to impose sanctions on Plaintiff for substantially the same conduct as described herein, namely the refusal to reduce Plaintiff's damages demand.

[7] Defendant mentions in passing, but does not develop, a theory that Plaintiff's claims are barred because they were assigned to Plaintiff's insurer as part of the indemnity payment. *See* Answer ¶¶ 99, 143, 145. Such an argument is properly asserted in an affirmative defense against Plaintiff's claims here or perhaps in motion practice after discovery.