```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/17/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANHUI KONKA GREEN LIGHTING CO., LTD,

                                         Plaintiff,

                -against-

GREEN LOGIC LED ELECTRICAL
SUPPLY, INC. et al.,

                                         Defendants.

-----------------------------------------------------------------X

**1:18-cv-12255 (MKV) (KHP)**

**<u>OPINION GRANTING MOTION TO AMEND IN PART AND REPORT & RECOMMENDATION TO DENY MOTION TO AMEND IN PART</u>**

**TO:** HON. MARY KAY VYSKOCIL, United States District Judge
**FROM:** KATHARINE H. PARKER, United States Magistrate Judge

      Plaintiff Anhui Konka Green Lighting Co., LTD. ("Konka") seeks leave to file a Third Amended Complaint ("PTAC") against Green Logic LED Electrical Supply, Inc. ("Green Logic"), its shareholders George Geffen and Richard Geffen, and its alleged successors NRG Technologies USA Inc. ("NRG"), General LED Corp. ("General LED"), and ECO LED Inc. ("ECO LED"). Specifically, Konka alleges (1) breach of contract against Green Logic; (2) fraud against Green Logic; (3) quantum meruit against all Defendants; (4) shareholder liability against George and Richard Geffen;[1] and (5) successor liability against General LED, NRG, and ECO LED. For the reasons discussed below, Plaintiff's motion to amend is GRANTED insofar as it asserts a cause of action for successor liability against NRG and General LED and shareholder liability against George Geffen. I respectfully recommend that the motion to amend be DENIED in all other respects.

---

[1] While the PTAC brings this claim against all Defendants, the Court understands the shareholder liability claim as limited to the shareholders of Green Logic.

**BACKGROUND**

This case arises out of Defendant Green Logic and its founder and CEO, Defendant George Geffen, failing to pay Plaintiff Konka for LED lights.  According to Plaintiff, its insurer – China Export and Credit Insurance Corporation's Sinosure program ("Sinosure") – limited the number of LED lights Green Logic could order from Konka without up-front payment.  As a way around this rule, Green Logic employees Michael Kang and Daniel Yu changed the relevant purchase orders to name Green Logic's affiliate companies, In Style USA, Inc. ("In Style") and JED Lights, Inc. ("JED Lights"), as the entities ordering the shipments of lights for Green Logic.  Konka ultimately shipped over $1 million worth of LED lights to Green Logic pursuant to twelve purchase orders, but Green Logic and its affiliates did not pay for them.  Green Logic sold some of the lights to its customers and contends that other lights were damaged upon arrival.  Sinosure found out about the scheme and refused to fully insure Konka against the default, which led to the instant action.  Now, pursuant to the Court's Opinion and Order at ECF No. 214, Plaintiff seeks to amend the Complaint in order to add shareholders of and successors to Green Logic based on information recently obtained in discovery.

**LEGAL STANDARD**

I. *Local Rule 7.1(a)(1)*

Under Local Rule 7.1(a)(1), all motions—except for letter motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court—must include "[a] notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to

2

which the motion is brought, and shall specify the relief sought by the motion." A moving party's failure to comply with Local Rule 7.1 is sufficient grounds to deny a motion. *Assets Recovery 23, LLC v. Gasper*, No. 15-cv-5049 (RJD) (CLP), 2017 U.S. Dist., LEXIS 117224, at *8 (E.D.N.Y. July 25, 2017). However, district courts also have "broad discretion . . . to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Courts in the Second Circuit have been reluctant to dismiss motions for violating Local Rule 7.1(a)(1), reasoning that "it would serve the interests of justice to resolve the motion . . . on the merits rather than on procedural deficiencies." *Gasper*, 2017 U.S. Dist. LEXIS 117224, at *11; *see also Porco v. Phoenix Bldg. Corp.*, No. 18-cv-5938 (NSR), 2019 U.S. Dist. LEXIS 85701, at *7 (S.D.N.Y. May 21, 2019) (proceeding to merits where rule violation is not "completely debilitating"); *On-Lipscomb v. City of New York*, No. 17-cv-10093 (ALC) (KNF), 2019 U.S. Dist. LEXIS 194076, at *12 (S.D.N.Y. Oct. 7, 2019) (proceeding to merits in the interests of saving time and resources).

## II. *Subject Matter Jurisdiction*

A pleading, including a proposed amended pleading, must comply with Federal Rule of Civil Procedure 8(a)(1), which requires an allegation of subject-matter jurisdiction. Fed. R. Civ. P. 8(a)(1); *see also Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009); *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971). This requirement may be satisfied by either explicitly demonstrating jurisdiction or by pleading sufficient facts in the body of the complaint from which the court may determine whether subject-matter jurisdiction exists. A plaintiff's failure to allege subject matter jurisdiction does not always require that the

action be dismissed, for "the actual existence of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements." *Dupont*, 565 F.3d at 64 (quoting *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 (2d Cir. 2000) (emphasis in original)) (internal quotes omitted).

### III.   Amending the Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted).  Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).  The touchstone for futility is whether the proposed amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b).  *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 389 (2d Cir. 2015); *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (a claim is not

futile if it presents a colorable claim for relief).

### IV.     *Joinder of Parties*

Finally, Federal Rule of Civil Procedure 21 provides the standard for adding new defendants in an amended pleading.  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  The same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21.  *See Williams v. Town of Hempstead*, 16-cv-1992 (ADS) (AYS), 2017 WL 4712219, at *2 (E.D.N.Y. Oct. 18, 2017).  However, a motion to join additional parties is subject to the "good cause" requirement of Rule 16(b) if the time to join additional parties has expired.  *See id.*; *see also International Media Films, Inc. v. Lucas Entm't, Inc.*, No. 7-cv-1178 (JGK) (FM), 2008 WL 781823, at *3 (S.D.N.Y. Mar. 20, 2008) ("if a Rule 21 motion to add a party after the scheduling deadline did not have to meet the good cause requirement of Rule 16(b), the scheduling order would be rendered meaningless").  Rule 21 is also read in conjunction with Rule 20, which provides that a defendant may be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Courts "will deny a request [to join a party] that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action." *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2nd Cir. 2006) (internal quotation marks and citation omitted).

**ANALYSIS**

I. *Plaintiff's Failure to Follow Local Rule 7.1(a)(1)*

In its opposition, Defendants state that Plaintiff's motion must be denied because it does not comply with Local Rule 7.1. (ECF No. 229-15 at 3). However, the cases cited by Defendants in support of this position are inapposite. In *Citibank, N.A. v. Super Sayin' Publ'g, LLC*, for example, the non-compliant motion was dismissed because it was not clear what relief was requested. No. 14-cv-5841 (SHS) (KNF), 2017 U.S. Dist. LEXIS 14902 (S.D.N.Y. Jan. 17, 2017). Here, Plaintiff states that it seeks to add parties and specifically identifies those parties. Thus, Plaintiff's notice of motion informs the Defendants and the Court of the relief requested in the instant motion. (*See* ECF No. 224 at 1). Likewise, in *Fennick v. NYCM*, failure to follow Local Rule 7.1(a)(1) was cited as two of four alternate grounds for dismissal. But, in that case there were far broader deficiencies than are at issue here. No. 3:13-cv-0085 (GTS) (DEP), 2013 U.S. Dist. LEXIS 134683, at *3 (N.D.N.Y. Sept. 20, 2013). Finally, in *Zdziebloski v. Town of E. Greenbush*, the moving party was found not to have violated the local rules. 336 F. Supp. 2d 194, 201 (N.D.N.Y. 2004). Thus, this case is also unhelpful to Defendants.

While Konka's notice of motion may technically violate Local Rule 7.1(a)(1), the motion clearly states that Plaintiff wishes to add parties and references the Opinion and Order on Discovery Issues which directed Plaintiff to file such a motion. (ECF No. 224 at 1). Under the circumstances, it is clear that Plaintiff has brought its motion under Federal Rule of Civil Procedure 15(a), and Defendants' opposition clearly demonstrates an understanding of this fact. (ECF No. 229-15) (addressing the merits of plaintiff's motion). The Court therefore finds that it would serve the

interests of justice and preserve time and resources to resolve the instant motion on the merits rather than on procedural deficiencies. Thus, the Court will not dismiss Plaintiff's motion for failing to comply with Local Rule 7.1. Accordingly, the Court now assesses the parties' arguments on the merits.

### II.     *Plaintiff has Alleged Subject Matter Jurisdiction*

Defendants next argue that Plaintiff's motion is futile—*i.e.*, that it would not survive a Rule 12(b) motion to dismiss—because Plaintiff has failed to allege subject matter jurisdiction with sufficient specificity. However, Rule 8(a)(1) only requires "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1). Here, contrary to Defendants' argument, Plaintiff alleges subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 and, further, alleges the citizenship of all relevant parties, including those Konka seeks to join in the action. (*See* ECF No. 224-1 ¶¶ 13-23.) Because no Defendant shares citizenship with Plaintiff, *see id.*, and the amount in controversy exceeds $75,000, *see id.* at 17-18, this Court has subject matter jurisdiction under 28 U.S.C. § 1332. Accordingly, Defendants' argument is without merit.

### III.     *Amending the Complaint*

Based on this Court's initial Scheduling Order in this case, the time for amending the complaint and joining parties has passed. The instant motion is therefore subject to the more exacting Rule 16(b)(4) standard, which requires a showing of good cause for the delay. As stated above, courts in this Circuit typically assess whether the proposed amendment will delay the case

or prejudice any of the parties to the action in assessing whether there is good cause justifying the proposed amendment.

To start, the record in this case does not reflect bad faith or undue delay by Plaintiff. On the contrary, the record shows that Defendants have not been forthcoming or consistent during the course of discovery. For example, in the January 27, 2020 deposition of George Geffen, President of Green Logic, Geffen testified that Green Logic is operational and plans to continue business. (ECF No. 200 ("Ullrich Decl."), Ex. 3 ("Geffen Dep.") 11:13-16; 14:17-20; 118:22-119:17.) Then, during the January 31, 2020 case management conference before this Court held just days later, counsel for Green Logic made similar representations (ECF No. 107 26:15-22) before abruptly reversing course and stating that Green Logic was out of business and that "GLL USA" is the successor in interest. (*Id.* at 32:24-33:14.) Further investigation from Konka revealed that the New York Department of Corporations does not have a "GLL USA" in its records. (*See* Ullrich Decl., Ex. 4.) And, all Defendants provided to demonstrate the existence of the successor entity is a one-page agreement between Marvin Yu and George Geffen conveying a trade name and certain domain names. (*See* ECF No. 224 at 5-6.)

At the February 27, 2020 hearing, the defendant's story changed again as George Geffen testified that he bought Green Logic "to make" General LED. (ECF No. 129 at 28:8-14.) Further complicating matters, on May 31, 2020, Green Logic's Rule 30(b)(6) witness stated that General LED went out of business and "became" NRG. (Ullrich Decl., Ex. 7 at 207:8-19.) Finally, ECO LED (another proposed Defendant to be joined) is an entity formed in 2018 by George Geffen at the

8

same address used by General LED and NRG. (ECF No. 224 at 8). Based on these facts, it is clear that Defendants created confusion regarding their related and successor corporations and were the cause of the delay. Hence, they cannot complain about the request to add the newly identified corporate entities. Nor can they credibly claim prejudice when the identities of these corporations were known only to them.

Defendants' claim of prejudice is more compelling with respect to George and Richard Geffen, who were known to Plaintiff from the start. Importantly, however, the facts underlying Plaintiff's recently advanced shareholder liability claims against the Geffen brothers have surfaced only recently. Until it was revealed that Green Logic is no longer operational, that "GLL USA" is a nonentity, and that General LED also may no longer be in operation, Plaintiff had no reason to involve the shareholders directly. Under these circumstances, this Court finds no undue delay by Plaintiff.

Defendants argue that the addition of these parties would be "tantamount to starting a new lawsuit" thereby prejudicing Defendants. The Court disagrees. While the addition of new parties will likely result in additional minimal expenditures by the parties, it is unlikely that the proposed amendment will introduce substantial, additional issues into the case. Plaintiff seeks only to join parties which are likely to possess the money Plaintiff claims it is owed. The need to expend some additional time and resources, alone, does not constitute undue prejudice. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 1-cv-11295 (CBM), 2004 U.S. Dist. LEXIS 989, at *10 (S.D.N.Y. Jan. 27, 2004). This is especially true in cases such as this, where many of these costs could have been

avoided if the Defendants had been more forthcoming with relevant information from the outset of discovery.

Accordingly, there is good cause to allow the PTAC.  That said, and as noted above, the Court cannot add parties if the claims against them are futile.  Therefore, the Court will address the claims asserted against each proposed new party below.

### IV. *George and Richard Geffen—Piercing the Veil*

Although shareholders and directors are generally not personally liable for the debts of a corporation, New York common law will pierce the corporate veil when (1) the shareholders exercise a complete domination of the corporation with respect to the transaction in question and (2) such domination was used to commit a fraud or other wrongdoing against the plaintiff.  *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141-42 (1993).  In determining whether to pierce the corporate veil on this basis, courts have looked to such factors as (1) disregard of corporate formalities, (2) inadequate capitalization, (3) overlap in ownership, (4) common office space, and (5) whether the transactions between the corporations were at arm's length.  *Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991).

While New York courts are reluctant to disregard the corporate form, at this stage of the case Plaintiff merely needs to state a plausible claim for shareholder liability.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff has carried that minimal burden, but only with respect to George Gefen. Generally speaking, the PTAC alleges that Defendants' evasive behavior regarding Green Logic's corporate structure and its successors, combined with the overlapping ownership and addresses of

these entities, suggest a disregard for the corporate form and complete domination of these businesses by the shareholders. (PTAC ¶¶ 93-98.) To be sure, domination, standing alone, is not enough. *Morris*, 82 N.Y.2d at 141. A party seeking to pierce the corporate veil must also establish that the owners "abused the privilege of doing business in the corporate form to perpetuate a wrong or injustice against that party such that a court in equity will intervene." *Id.* at 142. In this case, assuming the facts alleged in the PTAC to be true, the Court can reasonably infer that George Geffen abused the corporate form by creating overlapping corporate entities to conceal assets from Plaintiff. (*See* PTAC ¶¶ 93-98.) Further, the Complaint alleges that George Geffen was aware of, and authorized, the false representations made to Konka in order to induce Konka to ship the lights at issue in this case. (*Id.* ¶¶ 4, 74-78.) Indeed, the fact that George Geffen purportedly authorized Daniel Yu to lie to Plaintiff in order to induce the shipment of lights, along with the allegations of domination noted above, satisfy the pleading standard for purposes of the instant motion. *See Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (1st Dep't 2014) (finding that allegations of a defendant misrepresenting assets, abusing the corporate form to become judgment proof, and playing a significant role in convincing the plaintiff to enter into the problematic transaction were sufficient to defeat a motion to dismiss).

That said, the PTAC is devoid of any meaningful factual allegations on which a claim of shareholder liability against Richard Geffen could be premised. Thus, such a claim against Richard Geffen based on the PTAC would be futile.

Finally, it bears noting that while New York law previously required a plaintiff to obtain a

judgment against a defendant entity before attempting to pierce the corporate veil, *see Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 266 F. Supp. 79, 82 (S.D.N.Y. 1967), the law has since changed. *Ross v. Jill Stuart Int'l Ltd.*, 713 N.Y.S.2d 324, 324 (1st Dep't 2000); *see also ABN AMRO Bank, N.V. v. MBIA Inc.*, 2011 NY Slip Op 101, 916 N.Y.S.2d 12, 24-25 (1st Dep't 2011) (Abdus-Salaam, J. dissenting); *Chase Manhattan Bank Nat'l Ass'n v. 264 Water St. Assocs.*, 571 N.Y.S.2d 281, 282 (1st Dep't 1991) (holding that it was unnecessary to first obtain a judgement against the corporation). Thus, Konka's failure to attain a prior judgment against the defendant entities is no bar to its shareholder liability claim.

For the reasons stated above I find that the PTAC pleads facts sufficient to withstand a motion to dismiss insofar as it asserts claims of shareholder liability against George Geffen and grant the motion to add him as a defendant. However, based on the PTAC, there are insufficient facts alleged to warrant adding Richard Geffen to the case and, thus, I recommend denying the motion to amend as to Richard Geffen.

## V.     *General LED, NRG, and ECO LED—Successor Liability*

Under New York law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities. *New York v. Nat'l Serv. Indus.*, 460 F.3d 201, 209 (2d Cir. 2006). There are, however, several exceptions to this rule. A buyer of a corporation's assets will be liable as its successor if: "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered

into fraudulently to escape such obligations." *Id.* (citing *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983)).

Here, Defendants admit that General LED and NRG are successors of Green Logic. (*See* ECF No. 224-1 ¶ 100.) George Geffen previously represented to the Court that he bought Green Logic to make General LED. (ECF No. 129 at 28:8-14) ("I bought Green Logic to make – I created General LED"). This statement, combined with the Defendants' representations that Green Logic is no longer in business, (ECF No. 107 at 32:24-33:14), state a plausible successor claim against General LED. Furthermore, as noted above, Yu's deposition testimony suggests that General LED met a similar fate and "became" NRG. (Ullrich Decl., Ex. 7 at 207:8-19.) Therefore, Plaintiff's allegations similarly suffice to state a plausible successor claim against NRG.

However, Plaintiff has not satisfied its burden with respect to ECO LED. Plaintiff only alleges that ECO LED fits a pattern of behavior by Defendants which would suggest that it currently is, or will at some point become, the successor to NRG. The exceptions to the general rule of successor nonliability all presume that a transfer of assets sufficient to make the transferee a successor has taken place. *See Wass v. Cty. of Nassau*, 60 N.Y.S.3d 339, 341 (2nd Dep't 2017) (outlining the rule and exceptions for "a corporation which acquires the assets of another corporation"); *Matter of TBA Glob., LLC v. Fidus Partners, LLC*, 15 N.Y.S.3d 769, 779 (1st Dep't 2015) (explaining that absent an actual or de facto merger or consolidation, the purchaser of a corporation's assets does not acquire its liabilities). The PTAC fails to allege any transfer of assets between Defendants and ECO LED. Instead, it takes the conclusory position that ECO LED is

13

"likely" another successor. (ECF No. 224 at 8.) Such an allegation, without more, fails to carry Konka's burden of stating a plausible claim.

Accordingly, Plaintiff's proposed amendment is not futile insofar as it states claims against General LED and NRG. Therefore, the motion to amend is granted with respect to these entities. It is, however, futile with respect to ECO LED. Thus, I recommend denying the motion to amend as to this entity.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is GRANTED insofar as it adds causes of action for shareholder liability against George Geffen and successor liability against General LED and NRG. I respectfully recommend that the motion be DENIED with respect to claims asserted against Richard Geffen and ECO LED.

DATED:   February 17, 2021
         New York, New York

Respectfully submitted,

*Katharine H. Parker*
_____

## NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections (only to those portions of the Order that are a Report and Recommendation) pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.** *See also* **Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under**

**Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). If either party files written objections to the Report and Recommendation, the other party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Mary Kay Vyskocil at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Vyskocil. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);** *Thomas v. Arn***, 474 U.S. 140 (1985).**