UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ANHUI KONKA GREEN LIGHTING CO.,
LTD.,
               Plaintiff,

      -against-

GREEN LOGIC LED ELECTRICAL
SUPPLY, INC., GENERAL LED CORP.,
and NRG TECHNOLOGIES USA INC.,

             Defendants.
------------------------------------------------------X

Index No. 18-CV-12255 (MKV)(KHP)

DEFENDANTS' ANSWER TO
PLAINTIFF'S THIRD AMENDED
COMPLAINT_____

     Defendants Green Logic LED Electrical Supply, Inc. ("GLL"), General LED Corp.

("GLC") and NRG Technologies USA Inc. ("NRG"), GLC and NRG (the "Added Defendants"),

for their Amended Answer and Counterclaims to Plaintiff's Third Amended Complaint,  allege as

follows:


               AS AND FOR AN ANSWER

     Referring to the following ¶¶ of the Third Amended Complaint, Defendants:

     1. Responding to ¶ 1, deny the allegations therein, except admit that

Anhui Konka Green Lighting Co., Ltd. ("Konka") is in the business of

manufacturing and selling LED lights.

     2. Responding to ¶ 2, admit the allegation of therein.

     3. Responding to ¶  3 , deny the allegations of the ¶, except admit that Yu was evaluating

products for sale in the U.S.

     4 .  Responding to ¶ 4, admit the allegations of the ¶, except deny that Defendant GLL

expressed an interest in purchasing Konka's products.

5. Responding  to ¶ 5, deny the allegations of the ¶, except admit that Defendant GLL provided written purchase orders for product.

6. Responding to ¶ 6, deny knowledge or information sufficient to form a belief as to the truth of the allegations therein, except:

a. admit that Sinosure would vet potential buyers and provide protection against default up to specified amounts;

b. deny that GLL wanted to buy more of Konka's product than the specified amount.

7. Responding to ¶ 7, deny the allegations therein.

8. Responding to ¶ 8, deny the allegations therein.

9. Responding to ¶ 9, deny the allegations therein.

10. Responding to ¶ 10, admit that Yu  was never authorized to act for JED Lights, Inc. or Instyle USA, Inc. and otherwise deny the allegations therein.

11. Responding to ¶ 11, deny the allegations  of the ¶, except admit that GLL made payments of $105,750, and that GLL

12. Responding to ¶ 12, deny that GLL, Daniel Yu or Michael Kwang made any representations, and deny knowledge or information as to the truth of remainder therein.

13. Responding to ¶ 13, admit the allegations therein.

14. Responding to ¶ 14, deny the allegations therein, except admit that:

a.  Geffen was an employee of GLL; and

b. GLC and NRG are corporate entities incorporated in New York.

15. Responding to ¶ 15, admit the allegations therein.

2

16. Responding to ¶ 16, admit the allegations therein.

17. Responding to ¶ 17, admit the allegations therein.

18. Responding to ¶ 18, admit the allegations therein.

19. Responding to ¶ 19, deny knowledge or information about the allegations therein;

20. Responding to ¶ 20, admit the allegations of the ¶, except deny that

a. Geffen introduced Daniel Yu as one of GLL's business operations leaders; and that

b. Geffen confirmed that GLL employed Daniel Yu and authorized Yu to enter into

contracts on behalf of GLL.

21. Responding to ¶ 21, deny the allegations of the ¶, except admit that in February 2017, Yu

and Kuang visited Konka's Huizhou factory.

22.  Responding to ¶ 22:

a. admit that on or about 2/24/17 GLL started to issue Purchase Orders to Konka through

TradeGecko, an electronic portal for the verification and management of supply chains and

purchase;

b. admit that each purchase order was sent to Konka by transmission to Lin Liu via e-

mail at Ben.liu@konkagreenlighting.com, but

c. deny knowledge or information about which purchase orders were received by Konka;

and

d. deny the allegations regarding what was stated on the respective purchase orders and

respectfully refer the court to such purchase orders for the contents therein.

23.  Responding to ¶ 23,  deny knowledge or information regarding whether Yu modified

purchase orders, and if so, what the modifications consisted of.

3

24. Responding to ¶ 24, deny the allegations therein, except

a. admit that over the course of February and March 2017, Konka notified Defendant GLL that Konka accepted GLL's Purchase Orders, and

b. admit that Konka shipped the quantify of products that GLL requested in each purchase order,

c. deny knowledge or information about what Konka relied on in shipping products to GLL.

d. deny knowledge or information regarding what the purchase orders obligated GLL to do and respectfully refers the Court to the contents therein.

25. Responding to ¶ 25, deny knowledge or information regarding what Kuang did or said;

26. Responding to ¶ 26, deny knowledge or information sufficient to form a belief as to the truth of the allegations therein.

27. Responding to ¶ 27, deny knowledge or information sufficient to form a belief as to the truth of the allegations therein.

28. Responding to ¶ 28, deny knowledge or information sufficient to form a belief as to the truth of the allegations therein.

29. Responding to ¶ 29, deny the allegations therein.

30. Responding to ¶ 30, deny the allegations therein.

31. Responding to ¶ 31, deny the allegations therein.

32. Responding to ¶ 32, deny the allegations therein.

33. Responding to ¶ 33, deny the allegations therein.

34. Responding to ¶ 34, deny the allegations therein.

35. Responding to ¶ 35, deny the allegations therein.

36. Responding to ¶ 36, deny the allegations therein.

37. Responding to ¶ 37, admit the allegations therein.

38. Responding to ¶ 38, deny the allegations therein.

39. Responding to ¶ 39, deny the allegations therein.

40. Responding to ¶ 40, deny the allegations therein, except:

    a. deny knowledge or information as to what Konka would or would not have done/

41. Responding to ¶ 41, deny the allegations therein, except:

    a. deny knowledge or information regarding what Konka would or would not have done under the circumstances set forth therein.

42. Responding to ¶ 42, admit the allegations therein.

43. Responding to ¶ 43, deny knowledge or information regarding the allegations therein.

44. Responding to ¶ 44, deny the allegations therein, except:

    a. deny knowledge or information regarding what Sinosure did.

45. Responding to ¶ 45, deny the allegations therein.

46. Responding to ¶ 46, admit the allegations therein.

47. Responding to ¶ 47, deny the allegations thereof.

48. Responding to ¶ 48, deny the allegations thereof, and respectfully refer the Court to the transcript of George Geffen's deposition to determine what he testified to.

49. Responding to ¶ 49, deny knowledge or information about what GLL's counsel said to the Court.

50. Responding to ¶ 50,  deny the allegations therein and respectfully refer the Court to the

transcript of the 2/7/20 transcript to determine what George Geffen claimed.

51. Responding to ¶ 51, deny knowledge or information sufficient to form a belief as to the allegations therein.

52. Responding to ¶ 52, repeat their answers to ¶¶ 1-42 as though fully set forth here.

53. Responding to ¶ 53, admit to the allegations set forth therein, except deny knowledge or information as to when Plaintiff made its standard terms and conditions of sale known to GLL.

54. Responding to ¶ 54, deny the allegations therein.

55. Responding to ¶ 55, admit to the allegations set forth therein.

56. Responding to ¶ 56, admit the allegations therein.

57. Responding to ¶ 57, deny the allegations therein.

58. Responding to ¶ 58, deny the allegations therein.

59. Responding to ¶ 59, deny knowledge or information sufficient form a belief as to the allegations therein.

60. Responding to ¶ 60, admit the allegations therein, except deny  knowledge or information sufficient form a belief as to what Plaintiff relied on.

61. Responding to ¶ 61, admit the allegations therein, except deny knowledge or information sufficient form a belief as to what Plaintiff relied on.

62. Responding to ¶ 62, admit the allegations therein, except deny knowledge or information sufficient form a belief as to what Plaintiff relied on.

63. Responding to ¶ 63, admit the allegations therein, except deny knowledge or information sufficient form a belief as to what Plaintiff relied on.

64. Responding to ¶ 64, admit the allegations therein.

6

65. Responding to ¶ 65, admit the allegations therein.

66. Responding to ¶ 66, deny the allegations therein.

67. Responding to ¶ 67,  deny the allegations therein.

68. Responding to ¶ 68, , repeat their answers to ¶¶ 1-57 as though fully set forth here/

69. Responding to ¶ 69,  deny the allegations therein.

70. Responding to ¶ 70, deny the allegations therein.

71. Responding to ¶ 71, deny the allegations therein.

72. Responding to ¶ 72, deny the allegations therein.

73. Responding to ¶ 73, deny the allegations therein.

74. Responding to ¶ 74, deny the allegations therein.

75. Responding to ¶ 75, deny the allegations therein, except admit that Plaintiff delivered to GLL certain merchandise.

76. Responding to ¶ 76, deny the allegations therein.

77. Responding to ¶ 77, deny the allegations therein

78.  Responding to ¶ 78, deny knowledge or information sufficient to form a belief as to the amount of Plaintiff's damages.

79. Responding to ¶ 79, repeat and reallege their answers to ¶¶ 1-80 as though fully set forth herein.

80. Responding to ¶ 80, deny the allegations therein.

81. Responding to ¶ 81, deny the allegations therein.

82. Responding to ¶ 82, deny the allegations therein.

83. Responding to ¶ 83, deny the allegations therein.

84. Responding to ¶ 84, deny the allegations therein.

85. Responding to ¶ 85, deny the allegations therein.

86. Responding to ¶ 86, deny the allegations therein.

87. Responding to ¶ 87, deny the allegations therein.

88. Responding to ¶ 88, deny the allegations therein.

89. Responding to ¶ 89, deny the allegations therein.

90. Responding to ¶ 90, repeat their responses to ¶¶ 1-98 with the same force and effect as if fully set forth here.

91. Responding to ¶ 91, denies the allegations therein, except denies knowledge and information sufficient to form a belief as to the allegation about a what a sucessor may be responsible for.

92. Responding to ¶ 92, admit the allegations therein.


<u>Allegations Applicable to All Admissions, Denials,
Affirmative Defenses, Counterclaims and Third-Party
Claims</u>

<u>No Contract Between the Parties Ever Came into Being</u>

93. No contract between the parties ever came into being because there was never a meeting of the minds as to important terms and conditions of the parties putative contract.

94. Plaintiff alleges that it had terms and conditions.  In particular:

a. At ¶ 56 of Plaintiff's Third Amended Complaint;

"Konka offered its products for sale *according to its standard prices, terms and conditions* of sale that Konka made available to GLL on or before February, 2017." (italics added)

8

95. But Daniel Yu never learned of Plaintiff's standard terms and conditions of sale until after the commencement of this action.  Thus, there was no meeting of the minds as to the terms of the parties arrangement and, by the same token, no contract ever came into being.

<u>The Payment by Sinosure and the Transfer of Plaintiff's Claim to Sinosure</u>

96. Plaintiff has already been paid for some of the losses it alleges.   Furthermore, Plaintiff no longer owns some or all of its cause of action for breach of contract.  In particular:

a. The China Export and Credit Insurance Corporation is a China corporation.  That corporation runs a program called Sinosure that insures suppliers like Plaintiff against default in payment by its customers.

On information and belief, in seeking $1,609,963 Plaintiff has not deducted the  $483,470.40 Plaintiff received from Sinosure.

b.  Sinosure sent Plaintiff a 3/12/18 Letter of Indemnity, written in Chinese, which annexes two documents:

   i.    a Letter of Subrogation, written in Chinese;

   ii.   the same Letter of Subrogation, but written in English.

c. GLL had the Letter of Indemnity translated into English.  It states, in relevant part:

"To: Anhui Konka Lighting... given that the buyer Green Logic Supply Inc....'s default caused losses to your company, our company decides to pay an indemnity to your company... the indemnity amount is ... USD 483,470.40."

... China Export & Credit Insurance Corporation"

   i.   The annexed Letter of Subrogation in Chinese transfers Plaintiff's rights to Sinosure:

"To: China Export & Credit Insurance Corporation,

This is to certify that we have received the indemnity... **the insured agrees to transfer all rights and interests under the terms of indemnity to your company** and grants the full authority to your company, so that your company can claim the compensation from the responsible party in the name of the insured or your company." (bold supplied).

      ii.  Similarly, the Letter of Subrogation written in English states:

To: China Export & Credit Insurance Corporation...

"In consideration of having received this payment, we hereby agree to **assign, transfer and subrogate to you,** to the extent of your interest, all our rights and remedies in and in respect of the subject matter insured, and to grant you full power and give you any assistance you may reasonably require of us in the exercise of such rights and remedies in our or your name." (bold supplied)

<u>Plaintiff Counterfeits Instyle and JED Lights Purchase Orders</u>

97. Sinosure offers insurance coverage based on the aggregate sales made by a supplier like Plaintiff to a particular purchaser like GLL.  If the insured's sales exceed a certain level (the "Ceiling"), then Sinosure will no longer offer insurance coverage.

98. By April of 2018, Plaintiff had reached the Ceiling.  In order to continue selling Goods to GLL, Plaintiff had to purport to be selling goods to a purchaser other than GLL.

99. Accordingly, on or about 4/17/18, Plaintiff's representative Ben Liu ("Liu") sent Defendant GLL's representative Daniel Yu ("Yu") a message via a software program called WeChat expressing a desire to have a company other than GLL issue Plaintiff purchase orders:

"Daniel.  There are two things about the New PO: 1, **need to move some pcs under another company's name for sino insure**" (bold supplied).

100.  Yu attempted to convince Liu that it was unnecessary to issue purchase orders in the name of any company other than Defendant:

"if you manufacture now, by the time it's time to ship, I would have paid X

amount; anyways and therefore the credit will be free by that time."

a. but Liu insisted on issuing purchase orders in the name of a company other than GLL:

"I need to have an answer for China today.  That's why I kept calling..." (ellipses in original)

101. Then someone-- it's not clear who-- issued purchase orders in the name of:

a. INSTYLE USA; and of

b. JED LIGHTS.

Plaintiff's Goods were Defective

102. The goods Plaintiff sent Defendant GLL were defective.  Amongst other things:

a. Plaintiff used below grade plastics;

b. Plaintiff used below grade power supplies.

As and for a First Affirmtive Defense

103. No contract ever came into being because Plaintiff never provided Defendant GLL with Plaintiff's terms and conditions until after the commencement of this action.  Thus, there was no meeting of the minds as to important terms and conditions of the parties' agreement.

As and For a Second Affirmative Defense

104. Plaintiff has been paid by Sinosure for some or all of the amounts it claims.

As and For a Third Affirmative Defense

105. Plaintiff doesn't own a portion of the breach of contract cause of action and quantum

11

meruit claims asserted by it.

### As and For a Fourth Affirmative Defense

106.  Plaintiff has failed to satisfy the applicable statute of frauds.

### As and For a Fifth Affirmative Defense

107.  If the parties had a contract, Plaintiff committed a material breach which relieved GLL

of any obligations to perform under the contract.

### As and for an Sixth Affirmative Defense

108. Defendant GLLs' acceptance of the delivery of Konka's products was fraudulently

induced by the falsification of Konka's manufacturing reports.

### As and for an Seventh Affirmative Defense

109.  Plaintiff's quantum meruit claim is barred by the "clean hands" doctrine applicable to

equitable claims like quantum meruit.

110. Amongst other things:

a. As noted above, Plaintiff and GLL were in pari delicto in a scheme to defraud Sinosure

into giving Plaintiff additional insurance coverage that Plaintiff was not entitled to;

b. Plaintiff seeks recovery from Defendants sums that it already received from Sinosure;

and

c. Plaintiff asserts causes of action that it no longer entirely owns.

<u>As and For an Eighth Affirmative Defense</u>

111.  If Yu were involved in the creation of the purchase orders in the names of InStyle and JED Lights, he was <u>in pari delicto</u> with Konka's sales agent Ben Liu.

<u>As and For a First Counterclaim (Breach of Implied Warranty of Merchantability)</u>

112. GLL repeats each of the foregoing allegations as if fully set forth hereinafter.

113. Plaintiff breached the implied warranty of merchantability by, amongst other things, using:

a. below grade plastics and

b. unreliable power sourcesAs a result, Defendant GLL was either unable to sell Plaintiff's goods to Defendant GLL customers, or such customers returned the goods.

114. By reason of the foregoing, Defendant GLL suffered losses not less than $2,168,l00, including:

a. $92,400, representing the cost of shipping Plaintiff's goods from  from China to the U.S.

b. $26,400, representing tariffs and freight charges paid by Defendant GLL;

c. $350,000 representing Defendant GLL's lost profits;

d. $100,000, representing bad debt losses resulting from Defendant GLL's customers refusing to pay for Plaintiff's goods;

e. $600,000, representing loss of business from Defendant GLL's customers;

f. $1,000,000, representing loss of future profits from a bad credit rating given Defendant

GLL by Sinosure.

<u>As and For a Second Counterclaim (Fraud)</u>

115. GLL repeats each of the foregoing allegations as if fully set forth hereinafter.

116.  From March 2017 to June 2017, Plaintiff and its owner Kuang Yu In, its president Yidi Zhang, and its foreign sales liaison Lin Liu engaged in a course of conduct constituting fraud. The conduct consisted of falsifying the manufacturing reports issued from March 2017 to June 2017 to conceal that Konka's products failed to comply with the specifications in Defendant GLL's purchase orders, and to sell Konka's products to Defendant GLL.

117. In particular:

a. Defendant GLL's purchase order required Konka's goods to last five years;

b. Konka used a component that would cause its produce to last less than five years.

c. But Konka falsified its manufacturing tests to show that their products would last five years.

118. Defendant GLL reasonably believed that Plaintiff's manufacturing reports truthfully stated the facts regarding the manufacture of Plaintiff's goods;

119. Acting in reliance on that belief, Defendant GLL accepted delivery of Plaintiff's goods.

120. By reason thereof, Defendant GLL suffered losses totaling  not less than $2,168,l00, including:

a. $92,400, representing the cost of shipping Plaintiff's goods from  from China to the U.S.

b. $26,400, representing tariffs and freight charges paid by Defendant GLL;

c. $350,000 representing Defendant GLL's lost profits;

14

d. $100,000, representing bad debt losses resulting from Defendant GLL's customers refusing to pay for Plaintiff's goods;

e. $600,000, representing loss of business from Defendant GLL's customers;

f. $1,000,000, representing loss of future profits from a bad credit rating given Defendant GLL by Sinosure.

121. In addition, Defendant GLL is entitled to recover $5 million in punitive damages.


      As and For a Third Counterclaim (Fraud, Breach of Covenant of Good Faith)

122. Defendants repeat each of the foregoing allegations as if fully set forth hereinafter.

123. At all relevant times Plaintiff possessed documents showing that Plaintiff had:

a.  received from Sinosure roughly $483,000 of the sum Plaintiff sought to recover;

b.  transferred its cause of action for that sum to Sinosure;

124. Despite having such documents, commencing in December 2018, Plaintiff embarked on a course of conduct to recover the $483,000 a second time from Defendant.

125. To that end, the Plaintiff filed three pleadings seeking to recover the $483,000 from Defendant, those being:

a. a 12/27/18 complaint,

b. a 2/11/19 First Amended Complaint;

c. 8/9/19 Second Amended Complaint; and a

d. 10/1/21 Third Amended Complaint.

131. On 1/6/20 and 1/7/20, Defendant cited Plaintiff to two cases holding that, under such circumstances, Plaintiff could not recover the $483,000 a second time from Defendant GLL--

15

namely:

     a. <u>Kozlowsky v. Briggs Leasing Corp.</u>, 96 Misc.2d 337, 342-43, 408 N.Y.S.2d 1001, 1004 (Sup. Ct. Kings Co. 1978)("Subrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the case if he could recover from both the insurer and from a third person, and (2) reimbursing the surety for the payment which it has made."

     b. <u>Hamilton Fire Ins. Co. v. Gregor</u>, 218 A.D. 536, 537, 218 N.Y.S. 534, 539 (1st Dept. 1926).

    126. Furthermore, Defendant GLL offered to permit Plaintiff and the Lawyer Third-Party Defendants to file a Third Amended Complaint decreasing its ad damnum by approximately $483,000.

    127. But Plaintiff continued to seek an amount that did not reflect the payment from Sinosure.

    128. The above-mentioned conduct constituted:

     a. fraud;

     b. breach of the covenant of good faith implied into every contract; and

     c. a violation of Rule 1.16 of the Rules of Professional Conduct.

    129. By reason of Plaintiff's Defendant expended an as-yet indeterminate sum in attorneys fees and related expenses in defense of the instant action,  and is entitled to judgment in the amount of such sum, together with $5 million in punitive damages.

<u>The Payment by Sinosure and the Transfer of Plaintiff's Claim to Sinosure</u>

99. Plaintiff has already been paid for some or all of the losses it alleges.   Furthermore,

Plaintiff no longer owns some or all of its cause of action for breach of contract.  In particular:

a. The China Export and Credit Insurance Corporation is a China corporation.  That

corporation runs a program called Sinosure that insures suppliers like Plaintiff against default in

payment by its customers.

b.  Sinosure sent Plaintiff a 3/12/18 Letter of Indemnity, written in Chinese, which

annexes two documents:

i.    a Letter of Subrogation, written in Chinese;

ii.  the same Letter of Subrogation, but written in English.

c. The Letter of Indemnity states, in relevant part:

"To: Anhui Konka Lighting... given that the buyer Green Logic Supply
Inc....'s default caused losses to your company, our company decides to pay an
indemnity to your company... the indemnity amount is ... USD 483,470.40."
                                                          ... China Export & Credit Insurance
Corporation"

i.   The annexed Letter of Subrogation in Chinese, which Defendant GLL had

translated, transfers Plaintiff's rights to Sinosure:

"To: China Export & Credit Insurance Corporation,
 This is to certify that we have received the indemnity...  the insured agrees to
transfer all rights and interests under the terms of indemnity to your company and
grants the full authority to your company, so that your company can claim the
compensation from the responsible party in the name of the insured or your
company."

ii.   Similarly, the Letter of Subrogation written in English states:

To: China Export & Credit Insurance Corporation...

"In consideration of having received this payment, we hereby agree to
assign, transfer and subrogate to you, to the extent of your interest, all
our rights and remedies in and in respect of the subject matter insured,

17

and to grant you full power and give you any assistance you may
reasonably require of us in the exercise of such rights and remedies in
our or your name." (bold supplied)

Plaintiff's Goods were Defective

107. The goods Plaintiff sent Defendant were defective.  Amongst other things:

    a. Plaintiff used below grade plastics;

    b. Plaintiff used below grade power supplies.

<u>As and For a First Affirmative Defense</u>

108. Plaintiff has been paid by Sinosure for some or all of the amounts it claims.

<u>As and For a Second Affirmative Defense</u>

109. Plaintiff doesn't own some of the causes of action asserted by it.

<u>As and for a Third Affirmative Defense</u>

110. The fraud alleged by Plaintiff was in fact perpetrated by Plaintiff itself.

<u>As and For a Fourth Affirmative Defense</u>

112.  Plaintiff has failed to satisfy the applicable statute of frauds.


### As and For a Fifth Affirmative Defense

113.  If the parties had a contract, Plaintiff committed a material breach which relieved Defendant of any obligations to perform under the contract.


### As and For a Sixth Affirmative Defense

114. Plaintiff did not reasonably rely on the appearance that InStyle or JED Lights had issued purchase orders because:

    b. Plaintiff's Ben Liu requested that Yu create purchase orders bearing the names of InStyle and JED Lights.


### As and for an Seventh Affirmative Defense

115. Defendant's acceptance of the delivery of Konka's products was fraudulently induced by the falsification of Konka's manufacturing reports.


WHEREFOR, Defendant demands 1) judgment dismissing Plaintiff's claims, 2) judgment in Defendant's favor  and against Plaintiff in an amount not less than $6,506,400,  plus $5 million in punitive damages, 3) judgment in Defendant's favor and against the Lawyer Third-Party Defendants in an amount equal to three times Defendant's attorneys fees, 4) trial by jury, and 5) such other and further relief as the Court deems just and proper.

Dated: New York, NY
       October 21, 2021

 

 

_____
          /s/
          Richard Pu
Attorney for All Defendants and Yu
120 E. 90th St., 10C
New York, NY 10128
(212) 427-3665 (o)

20