UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANHUI KONKA GREEN LIGHTING CO.,
LTD.,

               Plaintiff,

      -v-                                 No.  18-CV-12255-LTS-KHP

GREEN LOGIC LED ELECTRICAL
SUPPLY, INC., et al.,

               Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

          Plaintiff Anhui Konka Green Lighting Co., Ltd. ("Plaintiff" or "Konka") moves for partial summary judgment (docket entry no. 257), seeking judgment in its favor on the claims for breach of contract and successor liability asserted in its Third Amended Complaint (docket entry no. 254, ("TAC")).  Defendants Green Logic LED Electrical Supply, Inc. ("GLL"), General LED, Corp., and NRG Technologies USA Inc. (together, "Defendants") cross-move for summary judgment on all of Plaintiff's claims.  (Docket entry nos. 255, 256.) Plaintiff also moves to dismiss Defendants' counterclaims and strike Defendants' affirmative defenses.  (Docket entry no. 267.)  Defendants have requested that the Court stay resolution of Plaintiff's motion to dismiss and motion to strike pending the Court's decision on the cross-motions for summary judgment.  (Docket entry no. 269.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

          The Court has reviewed carefully all of the parties' submissions in connection with the instant motions.  For the following reasons, the Court grants Plaintiff's motion for partial summary judgment in its entirety; grants in part and denies in part Defendants' cross-

motion for summary judgment; grants Plaintiff's motion to dismiss Defendants' counterclaims in its entirety; grants in part and denies in part Plaintiff's motion to strike Defendants' affirmative defenses; and denies Defendants' motion to stay as moot.

BACKGROUND

Familiarity with the general context and procedural history of this case is assumed for the purposes of this Memorandum Opinion and Order.  (See docket entry nos. 34, 58, 212, 213, 214, 242, 244, and 251.)  Here, the Court will provide an overview of the facts relevant to the instant motion practice.  The facts recited here are undisputed unless characterized as allegations or assertions. [1]

Plaintiff is a company domiciled in China that manufactures and sells LED lights.  (TAC ¶¶ 1, 19; docket entry no. 262 ("Def. Answer") ¶¶ 1, 19; docket entry no. 258 ("Pl. 56.1 Stmt.")[2] ¶ 1.)  GLL is a New York corporation (TAC ¶ 16; Def. Answer ¶ 16) that purchased Konka's LED light panels beginning in or about February 2017 (TAC ¶¶ 20, 22; Def. Answer ¶¶ 20, 22; Pl. 56.1 Stmt. ¶¶ 7, 11-12)  For purposes of this litigation, it has been established that Defendants General LED Corp. and NRG Technologies USA, Inc. merged with

---

[1]    Facts recited as undisputed are drawn from evidence as to which there is no nonconclusory contrary factual proffer.

[2]    Local Civil Rule 56.1 requires a party opposing a summary judgment motion to submit, in response to the movant's statement of material facts, a counterstatement with numbered paragraphs corresponding to each paragraph in the moving party's statement. (See Local Civil Rule 56.1.)  Here, Defendants failed to submit a counterstatement responding to Plaintiff's statement of material facts, submitted in connection with Plaintiff's motion for partial summary judgment.  Therefore, the Court will deem all facts in Plaintiff's Local Rule 56.1 statement to be admitted for the purposes of Plaintiff's motion for summary judgment.  See Suares v. Cityscape Tours, Inc., 603 F. App'x 16, 18 (2d Cir. 2015).

GLL and "constitute a continuation of the selling corporation" and "continu[e] all of GLL's operations."  (See docket entry no. 251 at 12; see also docket entry no. 129 (" Feb. 27, 2020 Hrg. Tr.") at 28:8-14 (owner of GLL, George Geffen, stating "I bought Green Logic to make - - I created General LED."); docket entry no. 107 ("Jan. 31, 2020 Hrg. Tr. at 32:24-33:14 (GLL's defense counsel stating GLL "is no longer in business" and "[t]here's a successor in interest to GLL"; docket entry no. 244 at 9-10 (drawing "adverse inference against Defendants with respect to the relatedness of the corporate entities" and noting discovery showed "Green Logic and General LED share a corporate address" (citing docket entry no. 226-8).)

Representatives of Konka, including Mr. Ling Liu, had an initial business meeting with representatives of Defendant GLL, including Mr. George Geffen and Mr. Daniel Yu, in New York on or about February 13, 2017 (TAC ¶¶ 2, 20; Def. Answer ¶¶ 2, 20; see also Pl. 56.1 Stmt. ¶ 9), and representatives of GLL visited Konka's factory in Huizhou, China, shortly thereafter.  (Pl. 56.1 Stmt. ¶ 10; TAC ¶ 21; Def. Answer ¶ 21.)  On or about February 24, 2017, GLL began to issue purchase orders to Konka for LED lights.  (Pl. 56.1 Stmt. ¶ 11; TAC ¶ 22; Answer ¶ 22.)  Between February and June 2017, twelve purchase orders were issued (Pl. 56.1 Stmt. ¶¶ 12-16; TAC ¶ 22; Def. Answer ¶ 22), documenting "the quantity of products GLL requested to purchase from Konka, Konka's pricing for the requested products, and terms for shipment, delivery, and payment."  (TAC ¶ 55; Def. Answer ¶ 55; docket entry no. 255-9.)  A sample purchase order proffered by Defendants in connection with this motion practice shows that the purchase orders also contained information about the warranty for Konka's lights, including a "5 Year replacement warranty against any and all defects" and the buyer's available remedies should any goods be determined to be defective, including an "[i]mmediate 100% refund if over 2% defects [were] discovered within 90 after days (sic) of

arrival at destination port." (Docket entry no. 255-9.) In February and March 2017, Konka notified GLL that it accepted the first set of purchase orders GLL issued during that time frame and shipped the quantity of goods requested. (Pl. 56.1 Stmt. ¶ 15; TAC ¶ 24; Def. Answer ¶ 24.) GLL received and took possession of the goods shipped by Konka and, in turn, began selling the products to its customers. (Pl. 56.1 Stmt. ¶ 20 (citing docket entry no. 192, Ex. 8 ("Yu. Depo. Tr.") at 168:12-169:3-8).)

During the time period in which GLL was purchasing products from Konka, Konka was insured by the China Export and Credit Insurance Corporation and a program, called Sinosure, which would vet potential buyers and provide protection against default up to certain amounts. (TAC ¶ 6; Def. Answer ¶ 6.) Konka alleges that "GLL wanted to buy more of Konka's products than the specified amount" Sinosure would insure in case of default. (TAC ¶ 6.) To get around these insurance requirements, Konka alleges, representatives from GLL, Mr. Michael Kuang and Mr. Daniel Yu, made representations that GLL had two affiliate companies, JED Lights, Inc. and InStyle USA, Inc., who wished to purchase Konka's products and who authorized Mr. Yu to act on their behalf. (TAC ¶¶ 25-32.) GLL proffers a copy of an electronic message in which Konka's representative, Mr. Ben Liu, allegedly discussed with Mr. Yu, the "need to move" some products "under another company's name for [Sinosure]." (Docket entry no. 255-5.) In the TAC, Plaintiff alleges that Defendants misrepresented Mr. Yu's authority to act for the two additional companies. (TAC ¶ 10.) Defendants assert that Konka organized the deception in order to obtain insurance coverage for GLL's additional purchases of Konka's lights. (Docket entry no. 255-10 ("Def. MSJ Mem.") at 1, 3.) Defendants do not dispute that all of the products shipped pursuant to the purchase orders, even those technically issued in the names of JED Lights, Inc. and InStyle USA Inc., were delivered to

GLL's offices in New York.  (Pl. 56.1 Stmt. ¶¶ 18-20; see also Def. MSJ Mem. at 1, 3.)

In June 2017, GLL made only two partial payments, in the amounts of $54,750.00 and $51,000.00, toward the total balance owed pursuant to the twelve purchase orders.  (Pl. 56.1 Stmt. ¶¶ 17, 21; TAC ¶ 42; Def. Answer ¶ 42.)  Konka alleges that "[f]ollowing an extended period of nonpayment, Konka held delivery of the last shipment of products" valued at $208,125.00.  (TAC ¶ 11.)  Konka brought this case to recover the remaining amount Defendants allegedly owe for the products GLL ordered and received (Pl. 56.1 Stmt. ¶¶ 21-22), which Plaintiff approximates as $1,609,963.00.  (TAC ¶¶ 11, 63-67 (accounting for the "contract value of unpaid merchandise[,]" less the partial payments made, less the "value of product not delivered"); see also docket entry no. 260 ("Mengfeng Decl.") ¶ 2 ("Plaintiff is entitled to recover USD $1,609,963, in connection with the goods sold and shipped to Defendants according to the purchase orders.").)

After the initiation of this litigation, while the parties were engaged in discovery, Plaintiff produced a document (docket entry no. 255-7) setting forth conditions Plaintiff contends relate to Konka's warranty for its products (the "Limited Warranty document"). (Docket entry no. 256 ("Def. 56.1 Stmt.") ¶ 3; docket entry no. 255-1 ("Yu Decl.") ¶ 2.)  In the TAC, Konka alleges that the purchase orders represented acceptance of an offer to sell subject to Konka's standard conditions, and that Konka's "standard prices, terms and conditions of sale . . . [were] made available to GLL on or before February, 2017."  (TAC ¶¶ 53, 54.)  Konka also asserts, in its discovery responses, that the parties' agreement included the terms set forth in the Limited Warranty document.  (See docket entry no. 255-8 (Konka interrogatory response identifying the Limited Warranty document as the "list of applicable warranties for the products sold in this case" which did not represent "an exhaustive list of the 'terms' or 'conditions' of the

sale agreement[,]" but together with the "purchase orders and commercial invoices," formed the agreement between the parties).)  Defendants' position, in contrast, is that GLL was not aware of the Limited Warranty document, and the terms contained therein, at the time it issued the purchase orders.  (Yu Decl. ¶ 2.)

The Limited Warranty document set forth purported conditions on Konka's warranty that were not included in the purchase orders.  As noted above, the purchase orders included a section labeled "warranty" that stated, among other terms, "5 Year replacement warranty against any and all defects" and did not refer to any other documents as stating terms of the agreement.  (Docket entry no. 255-9.)  Although the Limited Warranty document provided that Konka "warrants to the original purchaser . . . that all LED lighting luminaires produced by Konka, will be free of defects . . . for a period of FIVE(5) YEARS[,]" it disclaimed any warranty of "[t]hird party components which choosed (sic) by the Purchaser, [and] incorporated into the Product."  (Docket entry no. 255-7.)  The Limited Warranty document also explained that Konka's warranty was conditioned on certain factors, including the "[e]nvironment temperature[s]"; "humidity rate[s]"; and "working hours per day" for the light panels' use.  (Id.)

Defendants proffer a declaration from GLL's purchasing agent, Mr. Daniel Yu, who represents that the terms and conditions within the Limited Warranty document would have "made the deal sufficiently unattractive to GLL that [GLL] would not have purchased from Plaintiff" had those terms been disclosed.  (Yu Decl. ¶ 6.)  Mr. Yu explicitly takes issue with Konka's disclaimer of a warranty of third-party components incorporated into Konka's products, which GLL claims would make it much more difficult for GLL to receive indemnification or contribution should a component of a lighting panel malfunction and GLL's

customers seek to hold GLL accountable.  (Id.)  Defendants also submit that the additional

warranty terms and conditions are so unclear, as they are "written in broken English," that it is

"impossible to understand" with certainty the conditions placed on the warranty.  (Id.)

In the TAC, Plaintiff asserts claims for breach of contract, fraud, quantum

meruit, and successor liability.  Defendants have proffered an expert report finding that three of

the light units allegedly sold by Konka were defective and extrapolating from that finding the

conclusion that "it is highly likely" that "the entire family" of the "products purchased by GLL"

from Konka were defective "[g]iven the[ir] similarity in construction."  (Docket entry no. 263-3

at 28.)  Defendants assert counterclaims for breach of the implied warranty of merchantability,

fraud, and "fraud, breach of covenant of good faith," as well as eight affirmative defenses.

<u>DISCUSSION</u>

Choice of Law

As an initial matter, because jurisdiction in this case is premised on diversity, and

both parties have presented arguments based on the law of the forum state, New York, the Court

has determined that it will apply New York law in addressing the parties' dispute.  Adler v. Solar

Power, Inc., No. 16-CV-1635-LTS-GWG, 2018 WL 1626162, at *5 (S.D.N.Y. Mar. 30, 2018)

("[B]y relying on New York law in their briefs, the parties implicitly consented to its

application." ); Hangzhou Silk Import & Export Corp. v. P.C.B. Int'l Indus. Inc., No. 00-CV-

6344-RLC, 2002 WL 2031591, at *3 (S.D.N.Y. Sept. 5, 2002) ("When jurisdiction in a federal

case is premised on diversity and both parties present arguments based on New York law, the

law of the forum state, it is appropriate for the court to apply New York law."); Jamuna Fashion

Wears Ltd. v. Micom Trading Corp., No. 09-CV-5339-BSJ-MHD, 2012 WL 13140780, at *3 (S.D.N.Y. Dec. 28, 2012) (same).

Cross Motions for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citations omitted). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

1.      Breach of Contract Claim

Both parties move for summary judgment with respect to Plaintiff's breach of contract claim. To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011). Plaintiff argues that it is entitled to summary judgment because it is undisputed that Konka and GLL contracted, through the issuance and Konka's fulfillment of the purchase orders for the purchase of Konka's LED lights, on which it now

sues; that Konka performed by shipping the ordered products to GLL; that GLL breached the contract by failing to pay the total amount due for the delivered products; and that Konka was damaged to the extent of the unpaid balance.  (Docket entry no. 259 ("Pl. MSJ Mem.") at 3-4.) Defendants do not dispute that Konka shipped its products to GLL pursuant to the purchase orders and that GLL only made two partial payments toward the amount owed.  (Pl. 56.1 Stmt. ¶¶ 18-21; see also docket entry no. 255-10 ("Def. MSJ Opp.") at 2 ("Konka shipped the quantity of products . . . requested in each Purchase Order" and "[t]he products were accepted by GLL.").)

In opposition to Plaintiff's motion and in support of their cross-motion for summary judgment on the breach of contract claim, Defendants argue that Plaintiff's breach of contract claim must be dismissed because Plaintiff has failed to establish that the parties entered into an enforceable agreement.  (Def. MSJ Opp. at 5-7.)  This position contradicts the position Defendants have previously taken in this litigation, in which they have conceded that the parties entered into enforceable contracts in the form of the purchase orders for Konka's lights.  (See docket entry no. 76 ¶ 5 (admitting, in answer to Second Amended Complaint, that "GLL provided written purchase orders for product;" "the product was shipped FOB Nanjing to GLL in New York;" and "GLL took possession of the product and began to sell the product to its customers as part of its regular business"); see id. ¶¶ 104-108 (asserting breach of contract counterclaim against Konka based on terms of the purchase orders and alleging "GLL's purchase orders were an offer to buy which, when accepted by Plaintiff, gave rise to an enforceable contract.").)  Defendants' assertion that no enforceable contract was formed is also at odds with its current counterclaim for breach of the implied warranty of merchantability, discussed infra, because such an implied warranty only arises in the context of an enforceable

contract.  See, e.g., NY Drilling, Inc. v. TJM, Inc. LLC, 573 F. Supp. 3d 854, 858 (E.D.N.Y. 2021) ("New York's Uniform Commercial Code dictates that every contract carries implied warranties of merchantability (under Section 2-314).").

Defendants do not dispute that GLL issued purchase orders to Konka setting forth terms and conditions for the purchase of Konka's lights.  (Def. MSJ Opp. at 1-2 ("GLL started to issue Purchase Orders to Konka . . . . [which] contained terms and conditions."); see also Yu Decl. ¶ 1; Def. Answer ¶ 22.)  Instead, Defendants now assert that there was no meeting of the minds as to all of the material terms of the contract, and thus no valid contract was formed at all, because the Limited Warranty document, which Konka asserts set forth the limitations and conditions of Konka's warranty, was never shown to Defendants prior to this litigation.  (Yu Decl. ¶ 2; Def. MSJ. Opp. at 5-7.)  In response, Plaintiff does not abandon its assertion that the terms of the Limited Warranty document apply to the purchase orders, nor does Plaintiff proffer any evidence that a copy of the Limited Warranty document was provided to Defendants at the time the purchase orders were issued.  Instead, Plaintiff argues that the Limited Warranty document is irrelevant because it is "apparent an enforceable contract" existed between the parties in that neither party disputes the existence of the purchase orders, Konka's shipping of the requested goods, and GLL's partial payment.  (Docket entry no. 264 ("Pl. MSJ Opp") at 3-4.)

To prevail on a breach of contract claim, a plaintiff must first prove "the existence of a contract between itself and [the] defendant."  Greystone Bus., 631 F.3d at 52 (2d Cir. 2011).  To be enforceable, a contract requires a "meeting of the minds" on the material terms of the agreement.  Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 397 (S.D.N.Y. 2014), aff'd sub nom. APEX Emp. Wellness Servs., Inc. v. APS Healthcare

Besthesda, Inc., 725 F. App'x 4 (2d Cir. 2018); Duckett v. Williams, 86 F. Supp. 3d 268, 272

(S.D.N.Y. 2015) ("Absent a 'meeting of the minds on all essential terms, there is no contract.'"

(citation omitted)); Starke v. SquareTrade, Inc., 913 F.3d 279, 288-89 (2d Cir. 2019) (same).

Under New York law, the existence of a binding agreement is a legal question for the Court to

decide.  Vacold LLC v. Cerami, 545 F.3d 114, 123 (2d Cir. 2008) (explaining that "whether a

binding agreement exists is a legal issue, not a factual one"); Duckett, 86 F. Supp. 3d at 272

("This critical inquiry—namely, whether a binding agreement has been formed—is a legal issue

for the Court to resolve.")

      The pertinent issue before the Court is whether Konka and GLL entered into an

enforceable contract.  Defendants do not contest that GLL's purchasing agent "issued the

purchase orders that resulted in the purchase of lighting panels" from Konka, which "contained

terms and conditions governing GLL's relationship with Plaintiff."  (Yu Decl. ¶ 1.)  GLL

concedes that each purchase order "documented the quantity of products GLL requested to

purchase from Konka, Konka's pricing for the requested products, and terms for shipment,

delivery, and payment."  (TAC ¶ 55; Def. Answer ¶ 55; docket entry no. 255-9.)  Defendants

also concede that GLL took possession "of each shipment . . . of the quantity of products

requested" that was shipped by Konka (TAC ¶ 60; Def. Answer ¶ 60), GLL sold the products to

its customers (Yu Depo. Tr. 168:12-169:15), and GLL made two partial payments, in the

amounts of $51,000.00 and $54,750.00, to Konka in June 2017 for the purchased products.  (Pl.

56.1 Stmt. ¶ 17.)

      Based on these undisputed facts, the Court concludes, as a matter of law, that the

parties entered into enforceable agreements for GLL's purchase of Konka's lights, that were

documented in the purchase orders, which set forth the material terms of the transactions.  See

Starke, 913 F.3d at 289 ("The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" to "assure that the judiciary can enforce the parties' mutually-agreed terms and conditions when one party seeks to uphold them against the other."); Resorb Networks, Inc. v. YouNow.com, 30 N.Y.S.3d 506, 510-11 (N.Y. Sup. Ct. N.Y. Cnty. 2016) (same).  Defendants' argument that there was no agreement is misguided and amounts to an attempt to leverage a document obtained in discovery to avoid the payment obligations set forth in the purchase orders GLL itself issued. At most, Defendants frame an issue as to whether the inconsistent and additional terms set forth in the Limited Warranty document were incorporated into the parties' purchase orders.  Because neither Plaintiff, in its breach of contract claim, nor Defendants, in their counterclaim for breach of an implied warranty, to be discussed infra, seek to enforce the terms of the Limited Warranty document, that issue is immaterial to the current dispute and the Court need not resolve it. Therefore, since no genuine issues of material fact exist as to whether the parties reached a meeting of the minds on the terms set forth in the purchase orders, from which all pending claims in this case arise, the Court concludes that the purchase orders reflect enforceable agreements.

   Defendants raise two other arguments in opposition to Plaintiff's motion for summary judgment as to its breach of contract claim.  First, Defendants assert that "there is a question of fact as to whether Plaintiff's products were defective."  (Def. MSJ Opp. at 3.) Defendants point to the parties' conflicting expert witness reports, which set forth contrasting positions with respect to whether the light panels GLL ordered from Konka exhibited defects. (Id.; docket entry no. 263-3; docket entry no. 263-5.)  Defendants also proffer an electronic message between the parties' representatives disputing whether there were quality issues

regarding the products.  (Docket entry no. 263-4.)  Defendants, however, fail to proffer any legal argument or explanation as to how an issue of fact regarding alleged defects in the products could defeat Plaintiff's motion for summary judgment based on failure to pay for the products that were delivered and accepted.

Under New York law, when the transactions between the parties involved the sale of goods, the dispute is governed by Article 2 of the Uniform Commercial Code ("U.C.C.") Jamuna, 2012 WL 13140780, at *3.  "When a buyer receives goods that are nonconforming, he is deemed to have accepted the goods pursuant to [section] 2-606 of the [U.C.C.] when he signifies to the seller that he will retain them despite their nonconformity, fails to reject them after a reasonable opportunity to inspect them, or performs any act inconsistent with the seller's ownership."  Hangzhou Silk Import, 2002 WL 2031591, at *5.  The buyer's acceptance of the goods "normally obligates the buyer to pay the contract price for the goods," even though "it does not prevent the buyer from interposing a counterclaim for breach of the underlying contract due to the nonconformity."  Id.

Here, it is undisputed that GLL performed acts inconsistent with Konka's ownership of the light panels by taking possession of the light panels delivered pursuant to the purchase orders and reselling those light panels to its customers.  (TAC ¶ 60; Def. Answer ¶ 60; Yu Depo. Tr. 168:12-169:15; Pl. 56.1 Stmt. ¶¶ 17-20.)  Although GLL's purchasing agent, Mr. Yu, testified that GLL's customers were dissatisfied with the light panels and returned the products, which GLL ultimately threw away (Yu Depo. Tr. at 213:3-214:8), those steps, at best, demonstrate that GLL may have had grounds to assert a counterclaim for breach of contract or for delivery of nonconforming goods.  Defendants have chosen not to assert either counterclaim here.  The Court concludes, therefore, that any issue as to whether the products were defective is

immaterial to the resolution of Plaintiff's breach of contract claim, since the undisputed facts

demonstrate that GLL accepted the light panels delivered pursuant to the purchase orders and

was obligated to pay the corresponding contractual price for the products delivered.

Second, Defendants argue that Plaintiff is not entitled to summary judgment on

its breach of contract claim, asserting that there is an "issue[] of fact as to what GLL owes

Konka" because Konka "failed to deduct $483,470.40 in insurance benefits received from an

insurer called Sinosure." (Def. MSJ Opp. at 3-4.) Defendants do not meaningfully develop this

argument, nor do they cite any legal authority in support of their position. In response (docket

entry no. 266 ("Pl. MSJ Reply") at 5-6), Konka refers to the Court's September 9, 2020,

decision in which the Court explained that under the "collateral source rule . . . , the amount of

an insurance recovery (or recovery from any other source 'collateral to' the litigation) for the

damages incurred by a plaintiff will not be set off from the final damage award against a

defendant." (Docket entry no. 212 at 10.)

"New York generally follows the 'collateral source' rule in a contract claim,

under which 'damages recoverable for a wrong are not diminished by the fact that the party

injured has been wholly or partially indemnified for his loss by insurance effected by him and to

the procurement of which the wrongdoer did not contribute.'" In re Platinum-Beechwood

Litig., No. 18-CV-6658-JSR, 2019 WL 4400324, at *2 (S.D.N.Y. Aug. 6, 2019) (quoting Ocean

Ships, Inc. v. Stiles, 315 F.3d 111, 116, 116 n.2 (2d Cir. 2002)); see also Ventura Assocs., Inc.

v. Int'l Outsourcing Servs., Inc., No. 04-CV-5962-PKL, 2009 WL 691066, at *2 (S.D.N.Y.

Mar. 17, 2009) ("The collateral source rule is a substantive rule of law that bars the reduction of

an award by funds or benefits received from collateral or independent sources." (citation

omitted)); Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623 n.15 (2d Cir. 2001).

The purpose of the rule is "to provide the innocent party with the benefit of any windfall."  <u>New York State Elec. & Gas Corp. v. FirstEnergy Corp.</u>, 766 F.3d 212, 238 (2d Cir. 2014) (internal quotation marks and citation omitted).  Having failed to proffer any meaningful argument as to why the Court should not apply the rule in this case,[3] Defendants have failed to raise an issue of fact as to damages.[4]

---

[3]    Although New York has limited the application of the rule by statute "such that evidence of third-party indemnification may be considered in certain types of tort actions," to reduce a plaintiff's recovery, the statute, on its face, does not prohibit application of the rule to contract actions.  <u>See</u> <u>Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc.</u>, No. 04-CV-5962-PKL, 2005 WL 1634002, at *6 (S.D.N.Y. July 12, 2005) (citing N.Y. C.P.L.R. § 4545); <u>see id.</u> (applying collateral source rule to breach of contract claim and explaining that "[t]he fact that [plaintiff] chose to minimize its financial risk through insurance cannot serve to benefit [defendant] by reducing its potential liability to [plaintiff]."); <u>Platinum-Beechwood Litig.</u>, 2019 WL 4400324, at *2 (explaining "New York generally follows the 'collateral source' rule in a contract claim" and refusing to take into account "the amount covered by insurance").

[4]    In its reply brief supporting its motion for summary judgment, and in the context of a discussion regarding Plaintiff's claim for quantum meruit, Defendants argue that "Plaintiff assigned and transferred to Sinosure Plaintiff's cause of action against Defendant (sic) to the extent of $483,470.40."  (Docket entry no. 265 at 8.)  Defendants' argument is not meaningfully developed but seems to rest on an assertion that Plaintiff acted in bad faith, and with unclean hands, by asserting a claim it no longer owns.  (<u>Id.</u> at 8-9.)  The defense of unclean hands is not applicable to Plaintiff's contract claim.  <u>Alonso Vasquez v. Azoulay</u>, 834 F. App'x 653, 655 (2d Cir. Feb. 1, 2021) (citing <u>PenneCom B.V. v. Merrill Lynch & Co.</u>, 372 F.3d 488, 493 (2d Cir. 2004)).  That aside, to the extent Defendants attempt to raise an issue of fact regarding whether Plaintiff is the real party in interest, the Court finds their argument to be unavailing.  Defendants' argument is based entirely on an unexecuted document that they assert to be a payment receipt between Plaintiff and its insurer.  (Docket entry no. 255-6.)  This document was attached to defense counsel's affidavit (docket entry no. 255-2) in which counsel merely refers to the exhibit as "3/12/18 Sinosure to Plaintiff."  Absent any evidence that this document is what Defendants claim it to be, they have not met their burden to properly authenticate the document.  <u>See</u> Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.")  Moreover, even were the document to be properly authenticated, it shows that Konka only received partial compensation for the amount Konka asserts GLL owes pursuant to

Therefore, Defendants have failed to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. Rule Civ. P. 56(e)) (emphasis in original).  Because the Court has determined that the parties entered into enforceable agreements for GLL's purchase of Konka's lights, and it is undisputed that Konka delivered its products pursuant to the purchase orders and Defendant GLL failed to pay the amount owed for the products delivered, Konka is entitled to judgment as a matter of law on its breach of contract claim.  For the same reasons, Defendants' motion for summary judgment on the breach of contract claim is denied in its entirety.

### 2.  Plaintiff's Quantum Meruit Claim

Defendants move for summary judgment on Plaintiff's quantum meruit claim. Plaintiff pled its quantum meruit claim in the alternative to its breach of contract claim.  (TAC ¶ 79 ("Except as regards the written contract pled in the alternative . . . .").)  Because the Court has concluded that there are no genuine issues of material fact as to whether the parties entered into enforceable agreements for the purchase of Konka's light panels, the terms of which were set forth in the purchase orders, and "there can be no equitable relief where there is an express (written or oral) contract governing the subject matter at hand[,]" the Court hereby dismisses Plaintiff's quantum meruit claim.  Simas v. Merrill Corp., No. 02-CV-4400-RCC, 2004 WL 213013, at *7-8 (S.D.N.Y. Feb. 4, 2004); Shetty v. SG Blocks, Inc., No. 20-CV-00550-ARR-

_____

the purchase orders.  (Docket entry no. 255-6.)  Because its insurer "has paid only part of the loss[,] both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest."  Ocean Ships, 315 F.3d at 116-117 (quoting United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949)).

SMG, 2020 WL 4719755, at *6 (E.D.N.Y. Aug. 13, 2020 (finding quantum meruit claim failed where "there [was] a written enforceable contract").

### 3.    Plaintiff's Successor Liability Claim

Konka also asserts a claim for successor liability, alleging that General LED Corp. and NRG Technologies USA, Inc. "are successors of GLL, and therefore, should be held liable for GLL's debts." (TAC ¶¶ 90-91.) Defendants admit that, to the extent GLL is found liable, General LED Corp. and NRG Technologies will also be liable. (See Def. MSJ Opp. at 7 ("[T]he liability of the Added Defendants is the same as that of GLL.").) Nor could they contest such theory, given Defendants' factual admissions on the record, discussed supra, and Judge Parker's decision finding that "it is appropriate to draw an adverse inference against Defendants with respect to the relatedness of the corporate entities" due to Defendants' "failure to produce basic corporate documents" and the prejudice that flowed to Plaintiff. (Docket entry no. 244 at 10.)

The Court recognizes that Plaintiff, in the TAC, alleges its claim for successor liability in connection with its quantum meruit claim, as opposed to its breach of contract claim. (TAC ¶¶ 90-91.) The Court will, however, deem the TAC to be amended to include a claim for successor liability, as against General LED Corp. and NRG Technologies, in connection with Plaintiff's breach of contract claim. The parties clearly litigated the successor liability claim as rooted in the theory that General LED Corp. and NRG Technologies are liable for any breach of contract committed by GLL. (See Pl. MSJ Mem. at 7-8 (arguing that General LED and NRG are "liable for GLL's breach"); Def. MSJ Opp. at 7 (arguing that "since GLL is not liable for breach of contract, neither are the Added Defendants"); Pl. MSJ Reply AT 6 ("Since GLL is liable for breach of contract by failing to pay for the goods sold and shipped by Konka, GLL's

successors General LED and NRG are liable for the breach.").)  Moreover, no additional discovery is needed on this claim because it involves the same set of facts underlying Plaintiff's claim for breach of contract, and the corporate relatedness of the three defendants has been established in this litigation.  See Rodriguez v. City of New York, No. 16-CV-5861-NG-RER, 2022 WL 900613, at *8 (E.D.N.Y. Mar. 28, 2022) (deeming complaint amended to include a negligence claim against an individual defendant whereby the "defendants addressed the merits of the negligence claim against [that individual defendant] in a pre-motion conference letter" and no further discovery was needed on the claim).  Therefore, the TAC is deemed amended to allege a successor liability claim rooted in breach of contract against General LED Corp. and NRG Technologies and, for the reasons stated above, Plaintiff's motion for summary judgment on this claim is granted.

### 4.   Plaintiff's Fraud Claim

Defendants also move for summary judgment dismissing Plaintiff's fraud claim, in which Konka alleges that GLL's representatives falsely represented that they were authorized to act on behalf of two "Fabricated Affiliate[]" companies to "bind the Fabricated Affiliates to product purchase orders with Konka."  (TAC ¶¶ 68-78.)  Defendants argue that Plaintiff's fraud claim must be dismissed pursuant to the in pari delicto doctrine, because Defendants allege that GLL's purchasing agent, Mr. Yu, collaborated with Konka's sales representative, Mr. Liu, to issue the purchase orders bearing the names of the supposed affiliate companies, InStyle and JED Lights.  (Def. MSJ Mem. at 5, 10.)

The in pari delicto defense "prohibits suits in which the plaintiff is as or more culpable than the defendant in the conduct forming the basis for the complaint."  UCAR Int'l Inc. v. Union Carbide Corp., 119 F. App'x 300, 301-302 (2d Cir. 2004); see also In re MF Glob.

Holdings Ltd. Inv. Litig., 611 F. App'x 34, 36 (2d Cir. 2015) (explaining that in pari delicto is "an affirmative defense which 'mandates that the courts will not intercede to resolve a dispute between two wrongdoers.'" (citation omitted)).  Under New York law, "in pari delicto is an affirmative defense as to which a defendant bears the burden of proof."  In re Refco Secs. Litig., 779 F. Supp. 2d 372, 375 n. 1 (S.D.N.Y. 2011) (citing Kirschner v. KPMG LLP, 15 N.Y.3d 446, 459 n.3 (2010)).  The defense is, generally, applicable "when the following two elements are present: (1) 'as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress,' and (2) public policy considerations favor applying the defense." Koch Indus., Inc. v. Aktiengesellschaft, 727 F. Supp. 2d 199, 212-213 (S.D.N.Y. 2010) (quoting Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1090 (2d Cir. 1997)).

 Here, Defendants have failed to establish that Plaintiff's fraud claim is barred as a matter of law by the in pari delicto defense.  See, e.g., Koch Indus., 727 F. Supp. at 213 (finding the first consideration of the in pari delicto defense "might weigh towards" application of the defense "since one of the plaintiff entities . . . has pleaded guilty to criminal antitrust conspiracy" but declining to apply the defense where doing so "would encourage a [defendant] company participating in an antitrust conspiracy to sell off part of its business engaged in wrongdoing to an innocent buyer").  Defendants argue that, "[a]ssuming arguendo that [Mr.] Yu was the person who issued the purchase orders bearing the names of Instyle and JED Lights, Yu and Konka were in pari delicto with Konka's sales representative Ben Liu."  (Def. MSJ Mem. at 5.)  Defendants seem to be relying on a proffered electronic message between Mr. Yu and Plaintiff's representative, Mr. Liu, in which Mr. Liu said, "Daniel.  There are two things about the New PO: 1, need to move some pcs under another company's name for sino insure . . . ."

(Docket entry no. 265 at 11 (quoting docket entry no. 255-5).)  This message, however, is insufficient to establish that Mr. Liu engaged in any wrongdoing, and a reasonable fact finder could draw the inference that Mr. Liu was relying on Defendants' misrepresentations that GLL's affiliates wished to purchase Konka's products and GLL's representatives had the authority to bind those affiliates to contractual agreements.  At this stage, issues of fact remain regarding Plaintiff's and Defendants' mutual involvement in issuing the purchase orders from the supposed affiliate companies.  Defendant's motion for summary judgment as to Plaintiff's fraud claim is therefore denied.

Plaintiff's Motion to Dismiss Defendant's Counterclaims

   Plaintiff moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss[5] the three counterclaims asserted in Defendants' answer – for breach of the implied warranty of merchantability, fraud, and "fraud, breach of covenant of good faith," – for failure to state a claim upon which relief can be granted.   The Court applies the same standards in considering a motion to dismiss a defendant's counterclaims as those that apply to a motion to dismiss a complaint.  See Zurich Am. Life Ins. Co. v. Nagel, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021).  To survive a Rule 12(b)(6) motion to dismiss, the counter-plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper pleading cannot simply recite legal conclusions or bare

---

[5]  Defendants have interposed a letter motion to stay the Court's consideration of Plaintiff's motion to dismiss, arguing that the Court should stay Plaintiff's motion to dismiss pending the Court's decision on the cross-motions for summary judgment because a decision in Defendants' favor could moot Plaintiff's motion to dismiss. (Docket entry no. 269.)  In light of the Court's denial of Defendants' summary judgment motion, Defendants' letter motion to stay is denied as moot.

elements of a cause of action; factual content must be pleaded that "allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the counterclaims and draws all reasonable inferences in the counter-plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); Kingvision Pay-Per-View, Ltd. v. Falu, No. 06-CV-4457-JGK, 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008).

1.       Counterclaim for Breach of the Implied Warranty of Merchantability

Defendants allege that "Plaintiff breached the implied warranty of merchantability by, amongst other things, using: a. below grade plastics and b. unreliable power sources."  (Def. Answer at 13 ¶ 113 ("First Counterclaim").)  Defendants further allege that GLL was "either unable to sell Plaintiff's goods to . . . customers, or such customers returned the goods[.]"  (Id. ¶ 113.)

Section 2-314 of the Uniform Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  U.C.C. § 2-314.  "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection."  Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 433 (2d Cir. 2013) (quoting Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp., 656 N.Y.S.2d 787, 789 (3d Dep't 1997)); Tears v. Boston Scientific Corp., 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) (same).  "This standard does not require that the goods be perfect, or that they 'fulfill [a] buyer's every expectation[.]'"  Caronia, 715 F.3d at 433-34 (citations omitted).  To the contrary, the implied warranty of merchantability "requires only that the goods sold be of 'a minimal level of quality'" focused on "'the expectations for the performance of the product

when used in the customary, usual and reasonably foreseeable manners.'"  Id. (quoting Denny v. Ford Motor Co., 87 N.Y.2d 248, 258-59 (1995)); see also Smith v. Apple, Inc., No. 21-CV-3657-DLC, 2022 WL 313874, at *6 (S.D.N.Y. Feb. 2, 2022) (same).  Applying this standard, to state a claim for a breach of the implied warranty of merchantability, the counter-plaintiff must allege that "the product was defectively designed or manufactured, that the defect existed when the manufacturer delivered the product to the purchaser, and that the defect is the proximate cause of the plaintiff's injury."  Tears, 344 F. Supp. 3d at 513.

Defendants have failed to plead sufficient factual allegations in support of their counterclaim.  Defendants allege in a conclusory manner that the products were "defective" because Plaintiff used "below grade" materials and "unreliable" sources, but provide no specific information from which a fact finder could infer the truth of the conclusory statements regarding the quality and source of the goods.  Nor do Defendants allege that the allegedly inferior materials rendered the light panels Konka sold unfit for their intended purpose – to provide illumination.  In fact, Defendants fail to plead any factual content alleging how the materials used interfered with the performance of Konka's lights or to show that the lights, as designed, were not fit for their ordinary purpose.  See, e.g., Nemes v. Dick's Sporting Goods, Inc., 521 F. Supp. 3d 328, 344 (Feb. 23, 2021) (explaining that "the ordinary purpose of a good is not usually defined by the individual function of an ancillary component" but rather "the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used" (internal quotation marks and citation omitted) (emphasis in original)); Apple, 2022 WL 313874, at *6 (finding that plaintiff failed to state a claim for breach of the implied warranty of merchantability because it failed to allege that the iPhones at issue "were incapable of making calls, browsing the internet, running applications, or otherwise

performing the 'ordinary purposes for which such goods are used'" and instead sole complaint was that "the iPhone is not sufficiently resistant to water" (citations omitted)).  Nor do Defendants adequately plead that any supposed defect in Konka's light panels was the cause of the alleged returns made by purchasing customers.

Defendants argue, in their opposition brief, that they are entitled to the inference that, "if GLL's customers were returning the goods, as alleged . . . , Plaintiff's goods were not of 'fair average quality' as required" and thus, Defendants have stated a claim.  (Docket entry no. 271, Ex. 4 ("Def. MTD Opp.") at 4.)  Section 2-314 of the U.C.C. provides that, "to be merchantable," the goods must "pass without objection in the trade under the contract description; and . . . [be] of fair average quality within the description; and . . . [be] fit for the ordinary purposes for which such goods are used . . . ."  U.C.C. section 2-314.  As explained above, however, the warranty "simply provides for a minimum level of quality[,]" <u>Marotto v. Kellogg Co.</u>, No. 18-CV-3545-AKH, 2018 WL 10667923, at *8 (S.D.N.Y. Nov. 29, 2018) and Defendants have failed to allege plausibly how the use of certain "below grade" materials or "unreliable" sources affected the overall use of Konka's products.  Moreover, "the comments to the U.C.C. make it clear that whether a good is capable of passing without objection in the trade under the contract description is fundamentally a question about whether it is of an acceptable level of quality."  <u>Campbell v. Whole Foods Mkt. Grp., Inc.</u>, 516 F. Supp. 3d 370, 393 n. 14 (S.D.N.Y. 2021) (citing N.Y. U.C.C. section 2-314, cmts. 2, 7); <u>Caronia</u>, 715 F.3d at 434 ("[The] implied warranty is not breached if the [products] were minimally safe when used in the customary, usual, and reasonably foreseeable manner.").  Because Defendants fail to plead any factual content showing (1) how the "below grade" or "unreliable" sources allegedly Konka used in its light panels rendered those products unfit for their intended purpose; or (2) a causal

link between the allegedly "below grade" or "unreliable" sources used in Konka's light panels and GLL's customers' decisions to return Konka's goods, the Court hereby grants Plaintiff's motion to dismiss Defendants' claim for breach of the implied warranty of merchantability. See Feliciano v. Gen. Motors LLC, No. 14-CV-06374-AT, 2016 WL 9344120, at *8 (S.D.N.Y. Mar. 31, 2016) (dismissing implied warranty of merchantability whereby although Plaintiff alleged "defective performance[,]" Plaintiff did not claim the defect kept her from using the product "in a reasonably safe manner"); Haag v. Hyundai Motor Am., 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (finding that "[s]o long as the brakes are effective at stopping the vehicle and provide the usual forewarnings when they begin to wear out (such as squealing, which plaintiff alleges they did), they do not present a danger to consumers" and dismissing breach of implied warranty claim).

2.     Counterclaims for Fraud and "Fraud, Breach of Covenant of Good Faith"

Defendants' counterclaim for fraud is based on its allegations that plaintiff "falsif[ied] the manufacturing reports issued from March 2017 to June 2017 to conceal that Konka's products failed to comply with the specifications in Defendant GLL's purchase orders, and to sell Konka's products to Defendant GLL." (Def. Answer at 14 ¶ 116 ("Second Counterclaim").) As Plaintiff notes in its brief, the Court has previously evaluated and dismissed a nearly identical counterclaim that Defendants asserted in response to Plaintiff's Second Amended Complaint. In the September 9, 2020, Opinion and Order, Judge Vyskocil, who was presiding over this case at the time, dismissed Defendants' claims that Konka engaged in fraud when it "falsif[ied] the manufacturing reports" "because a fraud claim does not lie for breach of a warranty contained in a contract." (Docket entry no. 212 at 6.) Despite this decision, GLL argues that its counterclaim should now survive dismissal because "GLL no

longer advances a claim for breach of contract," and therefore, "the problem identified in the Court's 9/9/20 order, no longer poses a impediment (sic) to GLL's filing of a fraud claim." (Def. MTD Opp. at 5.)

Defendants' argument is unavailing.  This Court has previously explained that "a tort claim such as fraud can only be maintained where a defendant 'has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.'" (Docket entry no. 212 at 6 (quoting New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995)).  Although GLL no longer advances a counterclaim for breach of contract, Defendants' counterclaim for fraud is expressly premised on Konka's five-year replacement warranty contained in the purchase orders.  (Def. Answer ¶ 117 (alleging that "Defendant GLL's purchase order required Konka's goods to last five years" but "Konka falsified its manufacturing tests to show that their products would last five years").)  Therefore, for the reasons stated in the September 9, 2020, Opinion and Order (docket entry no. 212), Defendants' counterclaim for fraud is dismissed for failure to state a claim.

Defendants have not proffered any argument in opposition to Plaintiff's motion to dismiss its third counterclaim, for "fraud, breach of covenant of good faith."  (Def. Answer at 15-16 ¶¶ 122-129 ("Third Counterclaim").)  This counterclaim rests on Defendants' allegations that Plaintiff "possessed documents showing that Plaintiff had" "received from Sinosure roughly $483,000 of the sum Plaintiff sought to recover" and "transferred its cause of action for that sum to Sinosure" and, "[d]espite having such documents[,]" Plaintiff initiated this cause of action.  (Id. ¶¶ 123-24.)  In support of its motion to dismiss, Plaintiff again refers the Court to the September 9, 2020, decision dismissing Defendants' nearly-identical counterclaim raised in

response to Plaintiff's Second Amended Complaint.  Having put forth no argument as to why

the Court should not adhere to the well-reasoned September 9, 2020, decision (docket entry no.

212), the Court hereby adopts its reasoning and dismisses Defendants' third counterclaim.

Therefore, Plaintiff's motion to dismiss Defendants' counterclaims is granted in

its entirety.  In light of the advanced status of this litigation, in which both parties have had

multiple opportunities to revise their pleadings, engaged in discovery, and moved for summary

judgment, the Court dismisses Defendants' counterclaims with prejudice.

Plaintiff's Motion to Strike Defendants' Affirmative Defenses

Plaintiff also moves to strike Defendants' affirmative defenses.  Federal Rule of

Civil Procedure 12(f) provides that the Court "may strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

"Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a

plaintiff to prevail is demanding."  Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v.

M.C.F. Assocs., Inc., 530 F. Supp. 3d 460, 464 (S.D.N.Y. 2021).  The plausibility standard

applies to determining the sufficiency of affirmative defenses, "with recognition that . . .

applying the plausibility standard to any pleading is a 'context-specific' task."  GEOMC Co. v.

Calmare Therapeutics Inc., 918 F.3d 92, 98 (2d Cir. 2019) (quoting Ascroft v. Iqbal, 556 U.S.

662, 679 (2009)).  The "key aspect of the context relevant to the standard for pleading an

affirmative defense" is that the "pleader of a complaint has the entire time of the relevant statute

of limitations to gather facts necessary to satisfy the plausibility standard[,]" while the "pleader

of an affirmative defense" has a much shorter time to respond.  Id.  Therefore, in evaluating a

motion to strike, the Court should consider (1) whether the affirmative defense satisfies the

plausibility standard, understanding the "context-specific" nature of that inquiry; (2) whether plaintiff has shown that "there is no question of law which might allow the defense to succeed" including whether there is a "legally insufficient basis" for the defense; and (3) the degree to which plaintiff will be "'prejudiced by the inclusion of the defense,' keeping in mind that '[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation.'" M.C.F. Assocs., 530 F. Supp. at 464 (quoting GEOMC, 918 F.3d at 97-99).

   As an initial matter, the Court notes that Defendants' answer is disorganized and difficult to follow. Paragraph numbers are out-of-order and repeated. Defendants seem to set forth their eight affirmative defenses beginning on page 11 of their answer, but also include a new section, beginning on page 18, in which they seem to assert seven affirmative defenses, largely overlapping in substance with those included earlier in the pleading but with some variance in language. Due to these difficulties, the Court will adopt the characterization Defendants put forth in their opposition to Plaintiff's motion to dismiss, describing their answer as containing eight affirmative defenses.

   Defendants' first five affirmative defenses are alleged in response to Plaintiff's breach of contract claim. First, Defendants allege that "[n]o contract ever came into being because Plaintiff never provided Defendant GLL with Plaintiff's terms and conditions until after the commencement of this action" and "there was no meeting of the minds as to important terms and conditions of the parties' agreement." (Def. MTD Opp. at 7 (quoting Def. Answer ¶ 103).) Defendants' second and third affirmative defenses allege that "Plaintiff has been paid by Sinosure for some or all of the amounts it claims" and "Plaintiff doesn't own a portion of the breach of contract. . . and quantum meruit claims asserted by it" due to Plaintiff's receipt of

payment from Sinosure and its subrogation of its claims. (Def. MTD opp. at 7-8 (quoting Def. Answer ¶¶ 104-105).) For reasons similar to those discussed in the Court's evaluation of the cross-motions for summary judgment, the Court finds that Defendants' allegations are insufficient to state plausible defenses to Plaintiff's breach of contract and quantum meruit claims as a matter of law. Therefore, the Court grants Plaintiff's motion to strike Defendants' first, second, and third affirmative defenses from the answer.

Defendants' fourth affirmative defense alleges that Plaintiff "has failed to satisfy the applicable statute of frauds" (Def. Answer ¶ 112) because "Konka's terms and conditions were never show (sic) to GLL" and "[a] fortiori, they were never put in writing." (Def. MTD Opp. at 8-9.) This affirmative defense, as pled, is conclusory and is insufficient as a matter of law to state a viable defense to Plaintiff's breach of contract claim. The statute of frauds requires certain contracts for the sale of goods priced at $500 or more to be placed in writing to be enforceable. See U.C.C. section 2-201(1). Defendants' allegations center on its position that GLL "never learned of Plaintiff's standard terms and conditions of sale until after the commencement of this action." (Def. Answer ¶ 95.) Such allegations fail to plausibly state a defense that the terms of a contract were never reduced to a writing. Indeed, the fact that Defendants produced the written terms and conditions of sale in connection with their motion for summary judgment highlights the absurdity of this defense. The Court, therefore, grants Plaintiff's motion to strike the fourth affirmative defense from the answer.

In their fifth affirmative defense, Defendants allege that, "[i]f the parties had a contract, Plaintiff committed a material breach which relieved GLL of any obligations to perform under the contract." (Def. MTD Opp. at 9 (quoting Def. Answer ¶107).) In their opposition to Plaintiff's motion to strike, Defendants argue that they sufficiently alleged that the

"goods Plaintiff sent Defendant GLL were defective" because "Plaintiff used below grade plastics" and "below grade power supplies" and "Defendant GLL was either unable to sell Plaintiff's goods to Defendant GLL customers, or such customers returned the goods."  (Def. MTD Opp. at 9 (quoting Def. Answer ¶¶ 102, 113).)  For reasons similar to those discussed above in the context of the Court's evaluation of Defendants' counterclaim for breach of the implied warranty of merchantability, the Court concludes that Defendants have failed to plead this affirmative defense adequately.  Defendants' allegations are conclusory in nature and fail to allege factual content in support of their allegation that the LED light panels were "defective." Defendants do not allege that Konka's light panels did not perform as they were intended or that they exhibited specific deficiencies that rendered their performance inadequate.  Nor do Defendants provide any factual allegations as to how the use of the "plastics" or "power supplies" that were allegedly "below grade" interfered with the functioning of the LED lights. The generalized nature of these allegations is even more egregious considering the opportunity Defendants have had to develop their affirmative defenses by this advanced stage of the litigation.  Furthermore, the Court recognizes that Defendants are precluded from introducing any documents concerning GLL's receipt and resale of Konka's lights, and customers' associated complaints, in furtherance of Defendants' claims or defenses.  (See docket entry no. 214.)  Therefore, the Court grants Plaintiff's motion to strike the fifth affirmative defense from the record.

Defendants' sixth and eighth affirmative defenses seem to be intended to respond to Plaintiff's fraud claim.  The sixth affirmative defense alleges that "Plaintiff did not reasonably rely on the appearance that InStyle or JED Lights had issued purchase orders because . . . Plaintiff's [representative] Ben Liu requested that [Defendant's representative] Yu

create purchase orders bearing the names of InStyle and JED Lights."  (Def. MTD Opp. at 9-10 (quoting Def. Answer ¶ 114).)  In support, Defendants allege that Konka's representative sent a message to GLL's representative "expressing a desire to have a company other than GLL issue Plaintiff (sic) purchase orders," and include the express content of the message in the allegations.  (Id. (quoting Def. Answer ¶ 99).)  Defendants further allege that GLL's representative "attempted to convince [Plaintiff's representative] that it was unnecessary to issue purchase orders in the name of any company other than Defendant [GLL,]" but "Plaintiff insisted."  (Def. Answer ¶ 100.)  Defendants point to the same allegations in their answer in supportive of their eight affirmative defense - that the parties' representatives may have been in pari delicto with one another in the "[c]reation of the purchase orders in the names of" GLL's supposed affiliate companies.  (Def. MTD Opp. at 10; Def. Answer ¶ 111.)  These allegations set forth sufficient factual content to render these defenses to Plaintiff's fraud claim both factually and legally plausible, and therefore, the Court denies Plaintiff's motion to dismiss the sixth and eighth affirmative defenses.

Defendants' seventh affirmative defense responds to Plaintiff's quantum meruit claim, and alleges that Plaintiff's claim "is barred by the 'clean hands' doctrine applicable to equitable claims like quantum meruit."  (Def. Answer ¶¶ 109-110.)  Because the Court has dismissed Plaintiff's quantum meruit claim, due to its finding that an enforceable contract

existed between the parties governing the claims at issue, Plaintiff's motion to strike this affirmative defense from the pleading is moot.

Therefore, the Court grants Plaintiff's motion to strike to the extent it relates to Defendants' first, second, third, fourth, and fifth affirmative defenses and otherwise denies Plaintiff's motion to strike.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to counts I and IV[6] is granted in its entirety. Defendants' motion for summary judgment is granted as to Plaintiff's claim for quantum meruit (count III) and is otherwise denied. Plaintiff's motion to dismiss Defendants' counterclaims is granted in its entirety and Plaintiff's motion to strike Defendants' affirmative defenses is granted in part and denied in part. Defendants' motion to stay the Court's consideration of Plaintiff's motion to dismiss is denied as moot.

Plaintiff is hereby awarded damages against the Defendants, jointly and severally, in respect of Plaintiff's breach of contract and successor liability claims in the amount of $1,609,963.00, plus 9% prejudgment interest on that amount from December 27, 2018, the date on which the complaint was filed in this action.

This Memorandum Order and Opinion resolved docket entry nos. 255, 256, 257, 267, and 269 . This case remains referred to Magistrate Judge Parker for general pretrial management and settlement discussions. The parties are directed to file a status update,

---

[6]     The Court deems Count IV amended to assert a successor liability claim for breach of contract, see supra pp. 17-18.

addressed to Judge Parker, by October 7, 2022.


       SO ORDERED.

Dated: September 6, 2022
       New York, New York

                                /s/ Laura Taylor Swain
                                LAURA TAYLOR SWAIN
                                Chief United States District Judge